SAMUEL J. FORTIER
FORTIER & MIKKO, P.C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503
Telephone: (907) 277-4222
Facsimile: (907) 277-4221
Email: sfortier@fortmikk.alaska.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK A. ROSENBAUM,<br><br>　　　　　Plaintiff,<br>v.<br><br>TIMOTHY A. BURGESS, DEBORAH M. SMITH, STEVE SKROCKI, TIM BLEICHER, and JOHN DOE I,<br><br>　　　　　Defendants. | Case No. 3:06-00144-RRB<br><br>**REPLY TO OPPOSITION TO MOTION FOR LIMITED DISCOVERY** |

## SUMMARY OF ARGUMENT

Mr. Rosenbaum is entitled to limited discovery to determine whether individual defendants he sued in State court acted outside the scope of their employment or office. Alaska law requires that, regardless of immunity, an employee who engaged in bad faith and deliberate misconduct, is subject to individual liability. In J.S. Services v. Tomter, decided on July 26, 2006, the Alaska Supreme Court squarely held that such conduct is outside the scope of employment. Mr. Rosenbaum has alleged that the actors here engaged in bad faith and deliberate misconduct on May 12, 2004. Under Tomter, which

-1-

this court most apply, Mr. Rosenbaum is entitled to limited discovery to establish the bad faith and deliberate misconduct of the actors, and to establish that they are not entitled to immunity, notwithstanding that the United States has not waived sovereign immunity, itself, for false imprisonment.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

This case arose under Alaska state law. The Government removed the case from the Alaska court, and certified that the conduct of each of the five named defendants was committed in the scope of his/her employment or office. The asserted authority for removal was on the basis of the Westfall Act.[1]

---

[1] 28 U.S.C. §2679(d). This statute provides in relevant part:

(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant . This certification of the Attorney General shall conclusively establish scope of office or employment for the purposes of removal.

(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant . This certification of the Attorney General shall conclusively establish scope of office or employment for the purposes of removal.

Mr. Rosenbaum was an Assistant United States Attorney for over 20 years, when, on May 12, 2004, and without any previous warning, he was summoned to the conference room of the United States Attorney, D. Alaska., shortly after 5:00 p.m. After being falsely accused of presenting a physical threat to others, he was directed to sign a statement acknowledging that he would be confined to his home as his work station, that he was not permitted into the Federal Building absent express authority, and that he must surrender his AUSA credentials as an Assistant U.S. Attorney. He was then ordered to accompany AUSA Steve Skocki to his office. Two presumably armed Federal Protective Service Officers accompanied, him. He was given ten minutes to pack his possessions. Then, AUSA Skocki and the armed officers escorted Mr. Rosenbaum to the elevator, down to the garage, and ordered him to leave.

Mr. Rosenbaum has sued the individuals who then held the office of United States Attorney, D. Alaska ( Timothy Burgess), his First Assistant U.S. Attorney, Deborah Smith, and Assistant U.S. Attorney Steve Skrocki, as well as the Federal Protective Service officers who took part in the events. Mr. Rosenbaum contends that, under Alaska law, their acts and conduct are not immunized, and that he is entitled to bring this action in state court. The defendants, now represented by the United States, have asserted that the acts and conduct forming the basis of the complaint are within the scope of each individual's employment or office.

A genuine issue of material fact exists. Mr. Rosenbaum has asserted that the outrageous treatment to which he was subjected, which included fear of force, false

imprisonment, and banishment, was so irrational and so utterly without a factual basis, that the justification must lie in retaliation based upon Mr. Rosenbaum's faith and heritage, and /or on retaliation for a past report regarding professional and ethical duties of candor owed the court.[2] The Government has termed these supported assertions as merely allegations of "personal animus," and on that basis, now urges the court to deny the motion for limited discovery. Because the uncontroverted evidence establishes that defendants were acting out of more than personal animus, Mr. Rosenbaum is entitled to limited discovery, as a matter of law.

## ARGUMENT AND AUTHORITY

---

[2] Mr. Rosenbaum's affidavit, to which the Government offered no response, states in relevant part:

    5.    I know [First Assistant U.S. Attorney] Deborah Smith. While working with Deborah Smith at the U.S. Attorneys Office, it came to my attention that she had filed an Affidavit with the Ninth Circuit seeking an extension of time. The affidavit was materially false. I brought this to the attention of the U.S. Attorney. Ms. Smith thereafter left the Anchorage office to work for the Department of Justice in other cities.....

    6.    Ms. Smith returned to Anchorage following Timothy Burgess' elevation to U.S. Attorney in 2001. Ms. Smith displayed an obvious personal animus against me, which I believe, at least in part, arose out of the incident involving the false Ninth Circuit affidavit.

    \*\*\*\*

    8.    Steve Skrocki, who became an Assistant United States Attorney between 1990 and 1992, rarely tried a case by himself, also developed and demonstrated an intense personal dislike for me. Because his conduct cannot be rationally explained in any other way, I can only conclude that it is based upon the fact that I am Jewish, and he has a bias against people who are not Christians like himself. Again, this is unrelated to office or work related activities.

Affidavit of Mark Rosenbaum, submitted in Support of Motion to Permit Limited Discovery (docket 12) and In support of Opposition to Government's Motion to Amend Caption, Opposition to United States' Certificate of Scope of Employment; Motion for Evidentiary Hearing and Motion for Remand (Dockets 13 and 20).

1.  <u>Statutory Scheme and Procedural Framework</u>

The Federal Tort Claims Act[3] applies to actions "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[4] Where an individual who is a government employee commits a tort not in the scope of his office or employment, the FTCA is not implicated, nor is the employee or officer entitled to the protections of the Westfall Act.[5] Whether an employee acted within the scope of his employment or office is to be determined under the law of the state where the tort arose.[6]

Where the United States has removed a case from state court under 28 U.S.C. § 2679(d)(2), and filed a scope certification, the certification is nonetheless challengeable, as the United States concedes.[7] Upon a challenge, the district court is to

---

[3] 28 U.S.C. § 2679.

[4] 28 U.S.C. § 2679 (b)(1)

[5] *Haddom v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995), *rehearing den.*; *see also, Nadler v. Mann*, 951 F.2d 301, 306 (11th Cir. 1992)(AUSA who leaked defamatory material to news media acted outside scope of employment); *Arthur v. United States*, 45 F. 3d 292, 294 (9th Cir. 1995)( requiring court to conduct hearings in contested certification cases); *Clamor v. United States*, 240 F.3d 1215, 1217 ( 9th Cir. 2001)(where accident occurred when employee not on duty, not in scope of employment); *Ross v. Bryan*, 309 F. 3d 830, 835 (4th Cir. 2002)( Attorney General's scope certification in error, and individual not within scope); *Quick v. United States*, 254 F. Supp. 2d 706 (S.D. Ohio 2002) (improper substitution where complaint against co-employee was false and defamatory); *Sullivan v. Shimp*, 324 F. 3d 397 (6th Cir. 2003) (Air Force attorney not entitled to immunity).

[6] *Wilson v. Drake*, 87 F. 3d 1073, 1075 (9th Cir. 1996).

[7] Memorandum of Points and Authorities in Support of United States' Opposition to Plaintiff's Motion for Limited Discovery (hereafter Opp. Brief) at 5; the leading case on this issue is *Guitierrez de Martinez*

review the certification *de novo,* and without deference.[8] Although the Government appears to argue that Plaintiff bears the burden of disproving the Government's certification[9], and therefore implies that the Court is to defer to the scope certification, case law does not support this argument. Rather, the Government's scope certification would appear to be an allegation as to capacity, and under such circumstances, "[w]hether a Government employee was acting within the scope of his employment is a mixed question of fact and law which [is] reviewed de novo."[10] De novo review requires that "[t]he court should entertain further documentary proof by the parties."[11]

Here, the Government simply asserts that Burgess, Smith and Skrocki acted within the scope of their office or employment, but cites to no regulation, no law, and no policy that would authorize or permit the detention of a colleague, much less under the threat of deadly force, because of vague allegations of "concern about security, his performance and his behavior...."[12] Moreover, the Government's assertion flies in the face of case

---

*v. Lamango,* 515 U.S. 417, 115 S.Ct. 2227, 2229, 132 L.Ed. 2d 375(1995); *see* Plaintiff's Memorandum in Support of Plaintiff's Opposition to United States Scope of Employment Certification, Notice of Substitution; and motion to Amend Caption, and in Support of Motion to Remand (Docket 13 at pp.7-9).

[8] *Meridian International Logistics Inc. v. United States,* 935 F.2d 740,745 (9th Cir. 1991). Here, the scope certification states no facts, but only asserts that the certification is "[o]n the basis of the information now available to me...." *See* Exhibit B to Notice of Removal (docket 1).

[9] Opp. Brief at 5

[10] Meridian International, 935 F.2d 745.

[11] *Id.*

[12] Opp. Brief at 3.

law requiring that, in similar circumstances, and in order to challenge an *allegation* (but not a determination that is non-challengable, for this would amount to a "powerful process... leaving to the claimant no remedy..."[13] ), the injured party is entitle to discovery and to a hearing on the scope certification.[14]

In order to challenge the scope certification, and for such challenge to have a meaningful de novo review by this court as to the facts, if any, supporting it, Plaintiff must be afforded discovery. However, in the absence of any rational basis for the heavy-handed way in which Mr. Rosenbaum was detained, and in view of the limited facts he has already asserted (vengeance, and personal animosity, faith-based discrimination), there exists no basis for a determination that the actions were within the scope of office or employment of these individuals.

In fact, the Government appears to impliedly concede as much. In support of its argument entitled, "Plaintiff is Not Entitled to Discovery on the Scope Issue,"[15] the Government cites *Davric Maine Corporation v. United States Postal Service.*[16] *Davric* is inapposite. There, the plaintiffs did not even argue that the allegedly defamatory statements were outside the scope of employment of the defendants. Rather, the plaintiffs' brief made "a

---

[13] *United States v. Nourse,* 34 U.S. (9 Pet.) 8, 23, 9 L.Ed. 31 (1835), quoted in *Guiterrez de Martinez,* 115 S.Ct. 2231

[14] *See Melo v. Hafer,* 13 F. 3d 736, 747 (3rd Cir. 1994); *Stokes v. Cross,* 327 F.3d 1210, 1214 (D.C. Cir. 2003); *Osbourne v. Haley,* 422 F. 3d 359, 364 (6th Cir. 2005).

[15] Opp. Brief at 6.

[16] Davric Maine Corporation v. United States Postal Service, 238 F. 3d 58 (1st Cir. 2001).

passing reference that [the federal employee] may have been motivated by 'personal animus' in making the defamatory statements. However, the brief does not adequately argue that [the federal employee] had a private purpose in defaming...." [17] By contrast, here, Mr. Rosenbaum's supporting affidavit sets forth facts that do establish personal and wrongful motives, not within the scope of employment, and against public policy.[18]

Similarly, the Fourth Circuit's holding in *Gutierrez de Martinez v. Drug Enforcement Agency*[19] does not require that Plaintiff must be able to articulate each and every fact in order to obtain limited discovery. In *Gutierrez de Martinez,* the central issue was not motivation. There, foreign nationals had been injured by the negligence of a DEA agent in Columbia, after he had been drinking.[20] At issue was whether the accident occurred within the scope of employment, in a lawsuit brought against an individual under diversity jurisdiction. Thus, the facts of the case are clearly distinguishable.

The United States erroneously asserts that personal animus, without more, is inadequate to support a scope challenge.[21] In fact, in *Davric,* the First Circuit specifically held that, in a defamation suit, the actor had to have a "private purpose in defaming the plaintiffs independent from his duties as an employee of the Postal Service so as to render

---

[17] *Id,* 238 F.3d. 268, n 10.

[18] *See* n. 2, *supra* below.

[19] Gutierrez de Martinez v. Drug Enforcement Agency, 111 F.3d 1148, 1153 (4th Cir. 1997).

[20] 111 F.3d 1150.

[21] Opp. Brief at 6-7.

-8-

his actions outside of the scope of employment...."[22] Here, as demonstrated, Mr. Rosenbaum has alleged specific facts supporting a "private purpose," unrelated to the work place. And, as will be demonstrated in the following section, under Alaska law, where the motive is corrupt, an otherwise immune actor is not acting within the scope of employment.

    2.    <u>Under Alaska's Law of Respondeat Superior, the Scope of Employment is Determined by the Fact Finder on a Case by Case Basis</u>

The Government erroneously asserts that "Alaska views the scope of employment liberally."[23] First, the Government's cited case is inapposite. *Cheely* is a criminal case, involving a bombing. Second, Judge Singleton's footnoted observation was, at best, his own observation as a federal district court judge. The observation has nothing to do with that criminal case, and there is no reported *Alaska* case that would support the observation.

The Government is also incorrect that Alaska "follows the Restatement (Second) of Agency's provision regarding scope of employment."[24] In fact, the Alaska Supreme Court has repeatedly held:

> This court does not follow a rigid rule for determining when tortious conduct occurs within the scope of employment; rather, we apply a flexible, multifactored test [fn.11]. We have generally looked to the various factors

---

[22] *Davic,* 238 F.3d 67, n.10.

[23] Opp. Brief at 7, *citing U.S. v. Cheely,* 814 F. Supp. 1430, 1433, n.14 (D. Alaska, 1992).

[24] *See* Opp brief at 7.

-9-

in the Restatement (Second) of Agency sec. 228 as 'relevant considerations,' though not prerequisites, to determine whether an employee should be held responsible for an employee's acts. [fn.12]
Fn.11 *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344, 346 (Alaska, 1990).
Fn.12 *Id., accord, Williams v. Alyeska Pipeline Ser. Co.*, 650 P.2d 343, 349( Alaska 1982); *Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 764 & n.14 (Alaska 1973)( rejecting proposition that must satisfy each factor).[25]

Not only does the Government err in its analysis under Alaska law with respect to scope of employment analysis, but the Government also miscomprehends case law on the subject. Thus, although the Government cites *Taranto*[26], it omits to point out that the Supreme Court reviewed the case on summary judgment. The Court held orally that genuine issues of material fact existed to deny a motion for summary judgment. The case simply does not address personal animus or personal motives.[27] Said the Alaska Court, "[N]o categorical statement can delimit the 'scope of employment' once and for all times. Applicability of *respondeat superior* will depend primarily on the findings of fact in each case."[28]

The Government concedes that this Court's determination as the truth of the scope certification must be made under Alaska law. Alaska law requires that intensive examination of facts be made by the fact finder at trial. Here, there has been no

---

[25] *Laidlaw Transit Inc v. Crouse*, 53 P. 3d 1093, 1098-1099 (Alaska 2002).

[26] *Taranto v. North Slope Borough*, 909 P. 2d 354 ( Alaska 1996)

[27] 909 P.2d 360.

[28] *Id.* at 359

opportunity to develop facts beyond those contained in the Plaintiff's filings to this Court. What is apparent is that the government has come forward with nothing to support the conduct of the principle actors against Mr. Rosenbaum. Hence, under Alaska law, this court may find that the conduct was based on impermissible and indefensible personal vendettas that are so contrary to public policy and in violation of Mr. Rosenbaum's rights as to be outside the scope of employment or office of the actors.

That is precisely what the Alaska Supreme Court held in several recent cases. For instance, in *Veco, Inc. v. Rosebrock*,[29] the court stated:

> Often a hostile work environment is created by co-employees or supervisors acting beyond the scope of their employment. They are acting for personal reasons and not, even in part, to serve their employer.[30]

In *Rosebrock*, the Alaska court refused to subject an innocent employer to punitive damages for the acts of its employees. The court explained, "[I]f an employee is acting outside the scope of his employment, he is not acting in any way to further the goals of the employer."[31] In *Rosebrock,* the Alaska Supreme Court refused to extend *respondeat superior* to liability for punitive damages arising out of sexual harassment. Similarly, the Alaska Supreme Court would be hard pressed to find that the hostile work place

---

[29] *Veco, Inc. v. Rosebrock,* 970 P. 2d 906, 910 (Alaska 1999).

[30] *Id.,* 970 P.2d at 910.

[31] *Id.,* 970 P.2d at 924.

-11-

environment that resulted in the false imprisonment in this case was within the scope of employment of the individual defendants.

Indeed, in *J&S Services, Inc. v. Tomter*[32], the Alaska Supreme Court held that "deliberate and bad faith misconduct" fell outside the scope of duties of an employee of the Alaska Division of Aviation.[33] In *Tomter,* a procurement officer deliberately interfered with a bid procedure in order to steer the bid away from plaintiff's company and towards a friend of the procurement officer.[34] Finding that the plaintiff had alleged sufficient facts that the procurement official had engaged in bad faith and deliberate misconduct, the court held that such would be outside the scope of employment.[35]

In *Ondrusek v. Murphy*[36], an employee of a horse ranch took his mother on a horseback ride at a time when the ranch was closed for business.[37] The mother broke her leg. The Alaska court approved the trial court's denial of summary judgment, finding

---

[32] *J&S Services, Inc. v. Tomter,* ___ P.3d___, Supreme Court Op. No. S-11375 ( Alaska, July 21, 2006)

[33] *Id.,* Op. No. S-11375 at 8.

[34] *Id.*

[35] In Mr. Rosenbaum's opening brief, he asserted that Alaska law is based on enterprise liability, so that the loss can be borne by those who created the risk. *See Memorandum of Points and Authorities in Support of Plaintiff's Opposition to United States' Scope of Employment Certification* at pp.11-12. The Government did not address Mr. Rosenbaum's argument that this court must apply the theory supporting the Alaska courts' scope of employment analysis and avoid restricting the liability of the individual defendants. The *Tomter* case lends further support to Mr. Rosenbaum's legal argument that Alaska courts will impose individual liability in the absence of finding a scope of employment to avoid unjust results based on statutory immunity.

[36] *Ondrusek v. Murphy,* 120 P.3d 1053 (Alaska 2005)

[37] *Id.,* 120 P.3d at 1055

that "material issue of fact exist regarding scope of employment...."[38] Thus, although the business' owner testified that the guides were encouraged to ride on days off, in order to get more experience, the court found that, where the employee testified that he did not have the employer in mind when conducting the free ride, the employee was not acting in the scope of his employment, there was no respondeat superior liability, and the jury could properly find that the Ranch was not subject to liability on account of its employee's actions. This, the court held, was sufficient to support a jury verdict that the guide was not conducting the ride in the scope of his employment.[39]

Thus, under Alaska law, motivation is an important factor to determine scope issues. Here, the only evidence of motivation is that supplied by Mr. Rosenbaum. That motivation establishes that the individual defendants were motivated by animus that is contrary to public policy. Ms. Smith's asserted motive was sheer vengeance. Too, the defendants were motivated by an animus because Mr. Rosenbaum was "different." He was raised, in New York City, the son of a Jewish firefighter. Under Alaska law, the uncontroverted facts support Mr. Rosenbaum's assertions that the conduct of the actors in this case was not in the scope of their federal employment or office.

3.  Plaintiff Has Alleged Force

---

[38] *Id.*, 120 P.2d at 1058.

[39] *Id.*, 120 P.3d at 1058.

Alternatively, the Government concedes that under the Restatement (Second) of Agency, § 228 analysis upon which the Alaska courts patterns its scope analysis, whether the actor's use of force is "expectable" is a factor for the Court to analyze. In the words of the Restatement:

> (d). if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[40]

The Government asserts, erroneously, that "[t]he fourth element in the Restatement ... is not relevant in this case.... This factor does not pertain here, as plaintiff's complaint does not allege that physical force was used."[41] In fact, the complaint does allege that physical force was used. The complaint alleges that "Mr. Rosenbaum, knowing that one or both Defendant Bleicher and Defendant John Doe 1 were armed, and fearing that they would use whatever force necessary [sic] to effect objective [sic], did as he was ordered."[42]

The Government does not explain its assertion that the use of force to contain, isolate, and substantially deprive an Assistant U.S. Attorney with 20 years experience is of a "kind [that these defendants were] employed to perform." Nor does the government supply any useful citation to its assertion that the confinement in this case was not "unexpectable by the master." The government just asserts that this is the case [Opp brief at 10].

---

[40] Restatement (Second) of Agency, §228(d); *See also Ondrasek*, 120 P.3d at 1056 (citing section).

[41] Opp. Brief at 10

[42] State Court Complaint at paragraph 6.

-14-

The Government references the USDOJ website, and asserts that this site indicates that the United States Attorney has 'been delegated full authority and control in the areas of personnel management....." However, there is nothing on the web site that would indicate that "personnel management" is broader than that allowed under Title 5 of the United States Code. And there is nothing in Title 5 or in the regulations that authorizes the "personnel management" of unlawful confinement under threat of deadly force, as here. The Government's reference makes clear that Plaintiff is entitled to limited discovery regarding the Government's assertions, wholly unsupported, that the conduct in this case was within the scope of office or employment of the individual actors and each of them.

4.  Response to Government's "Overall Analysis"

The Government also appears to be in error with respect to its analysis of federal case law determining "animus" cases. For instance, the Government cites *Maron v. United States*[43] for the proposition that no discovery should be permitted, because, allegedly, federal courts will not look at ill will alone.[44] In reality, the Moran court did

---

[43] *Maron v. United States*, 126 F.3d 317 (4th Cir. 1997).

[44] Opp. Brief at 11, *citing Maron*, "126 F.3d at 317."

-15-

allow discovery.[45] Moreover, the actual quote, in context, that the Government relates (Opp. Brief at 11), states

> <u>Maron asks us to consider only whether the defendant doctors held animosity towards him, a fact that remained unproven at the evidentiary hearing on this matter and to use that sentiment alone to deny substitution. Instead, it is more proper to notice, as the district court did, that all of the complained of acts were the very sort that the defendants conducted during the regular work day.</u> Even if the defendants harbored ill will for Maron, we will not look at that ill will alone, but must look at the alleged acts and the doctors' duties at the NIH in making the decision about whether they were acting within the scope of employment.

(emphasis added to show text omitted by Government). Hence, in context, the *Maron* court's analysis establishes that evidentiary hearings regarding disputed issues of fact in scope certification proceedings are in fact preceded by some limited discovery, in order that the theory asserted by the Attorney General may be tested fairly. More importantly, unlike the plaintiff in *Maron*, Mr. Rosenbaum has already articulated facts that go well beyond mere ill will and acts regularly conducted.

In *Martinek v. United States*,[46] the district court apparently permitted limited discovery and also conducted an evidentiary hearing.[47] In *Martinek*, moreover, the district court also found that the conduct of the superior officers was consistent with military discipline, and that the officers articulated neutral-based reasons for their

---

[45] *Maron*, 126 F. 3d at 325 (noting that "Maron did little at the <u>hearing</u> to refute the certification.... In contrast <u>most of the depositions Maron took of defendant and superiors at the NIH supported the United States' position</u>.....) (emphasis supplied).

[46] *Martinek v. United States*, 254 F. Supp.2d 777 (6th Cir. 2003)

[47] *See Id.*, 254 F. Supp. 2d at 788 (referring to depositions).

-16-

actions.[48] In contrast, here, the Government makes only a bald assertion that the conduct, whatever it is, is within the scope of employment. There is no factual support for the Government's assertion that, "The defendants in this case were performing duties that arise out of and are reasonably related to and a part of their legitimate work activities." (Opp. Brief at 12). Nor, for that matter, even if the actions were related to their office or scope of employment, would the conduct be within the scope, as defined by Alaska law.[49]

Here, the Attorney General's certification is wholly conclusory. It states no basis as to the author's understanding of the facts. The Government's brief does not further explicate the issue. There is no dispute, for instance, that Mr. Rosenbaum signed the letter dated May 12, 2004, attached as Exhibit A to the Government's brief. What is disputed is the motivation for the individual defendants to have done what they did. Because those issues are dispositive of the scope certification, Plaintiff is entitled to limited discovery.

---

[48] *See Id*, 254 F. Supp 2d 788-789.

[49] The Government also quotes, without explaining the context, of two additional cases, *Koch v. United States,* 209 F. Supp. 89 (D.C. 2002) and *Brumfield v. Sanders,* 50 F. Supp 2d 381, 384-385 (M.D. Penn. 1999). In *Koch*, two federal employees became engaged in a shouting match over a work-related dispute. This matter was so clearly a "scope" issue that no discovery was determined necessary. There, Mr. Koch pointed out the co-worker in a memo to the worker's superior as another person with a lot of tardies. The co-worker yelled at the plaintiff, accusing him of defamation, and the plaintiff sued. Clearly, the case is not analogous. In *Brumfield,* the plaintiff was pursuing discovery through an administrative "Merit System Protection Board" proceeding. 50 F. Supp at 385. The Government objected to the plaintiffs' request for additional discovery sought through the federal court litigation. *Id*. The Plaintiff failed to address the duplicative discovery argument, and the court found the argument had "substantial merit." *Id*. The court stated that the duplicative discovery would undermine the intent of the Westfall Act. *Id*. It did not, hold, as the Government implies, that claims of personal animus are never to be accorded discovery. *Contrast* Opp Brief at 13.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304 ANCHORAGE, ALASKA 99503 TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

## CONCLUSION

Mr. Rosenbaum is entitled to limited discovery, in order to establish that the conduct of the defendants was not within the scope of their employment or office, to be determined under Alaska law. Alaska law requires a fact-intensive determination of scope issues where the employee engages in deliberate misconduct and bad faith performance of his duties, is not acting within the scope of his employment, nor would statutory immunity bar personal liability. Issues pertaining to motivation and force are not yet discovered. Mr. Rosenbaum earlier proposed a discovery plan to the Government and that plan was submitted to this Court as Exhibit B to the Government's submittal. The Court is requested to order the parties to proceed under the plan.[50]

RESPECTFULLY SUBMITTED this 11th day of September, 2006, at Anchorage, Alaska.

SAMUEL J. FORTIER
Attorney for Plaintiff

/s /Samuel J. Fortier
FORTIER & MIKKO, P.C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503
Telephone No: (907) 277-4222
Facsimile: (907) 277-4221
E-mail: sfortier@fortmikk.alaska.com
AK Bar No. 8211115

---

[50] The Government apparently objects to the plan as overly broad. The better course is to permit the parties to attempt to resolve the issues the Government raised in its brief between themselves, prior to Court involvement. Mr. Rosenbaum should be permitted to obtain discovery that the Government asserts supports its insistence that the U S. Attorney did not exceed the scope of his office. For instance, Mr. Rosenbaum believes that evidence may exist that the defendants deliberately misled the Executive Office of the U.S. Attorney in this matter, and that documentation should be discoverable, as should testimony from those who received the information.

**CERTIFICATE OF SERVICE**

I hereby certify that on September, 2006,
a true and accurate copy of the foregoing
was served electronically on:

Rebecca S. Cohen

-19-