SAMUEL J. FORTIER
FORTIER & MIKKO, P.C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503
Telephone: (907) 277-4222
Facsimile: (907) 277-4221
Email: sfortier@fortmikk.alaska.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| MARK A. ROSENBAUM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:06-00144-RRB |
| v. | ) | |
| | ) | |
| TIMOTHY A. BURGESS, DEBORAH | ) | |
| M. SMITH, STEVE SKROCKI, TIM | ) | **MEMORANDUM OF POINTS AND** |
| BLEICHER, and JOHN DOE I, | ) | **AUTHORITIES IN SUPPORT OF** |
| | ) | **PLAINTIFF'S AMENDED MOTION FOR** |
| Defendants. | ) | **EVIDENTIARY HEARING** |
| | ) | |

## I. **INTRODUCTION**

After Plaintiff brought this lawsuit in state court, alleging damages from the fact

that the Defendants had falsely imprisoned him, the United States removed the case to

federal district court, and certified that each of the Defendants acted within the scope of

his or her employment. Mr. Rosenbaum sought discovery, which this court subsequently

granted in part.[1] Mr. Rosenbaum now moves for an evidentiary hearing at which he will

---

[1] Docket No. 29.

establish, by a preponderance of the evidence, that Defendants were not acting within the scope of their employment in falsely imprisoning him.

## II.    FACTS

1. Mr. Rosenbaum Was an Accomplished Assistant United States Attorney

Mark Rosenbaum was hired as an Assistant United States Attorney with the United States Attorney's Office for the District of Alaska on April 23, 1984. His tenure as an Assistant United States Attorney for the District of Alaska lasted from 1984 until his forced early retirement in September 2004. Between April 23, 1984 and May 12, 2004, Mr. Rosenbaum's duty station was the United States Attorney's Office in the Anchorage Federal Building.[2]

During those 20 years, Mr. Rosenbaum accumulated numerous awards for his work in the Criminal Division.[3] Mr. Rosenbaum was known for his hard work on behalf of the United States throughout his career. His employee evaluations, through 2001, rated him as "meets or exceed expectations" at all times and "excellent" or "outstanding" in a majority of categories.[4]

Mr. Rosenbaum was, throughout a majority of his career, the Assistant United States Attorney in Alaska charged with complex drug-related prosecutions. His

---

[2] Affidavit of Mark Rosenbaum.
[3] *See* Exhibits 1 through 11 to Affidavit of Counsel, consisting some of his awards from federal, state and local law enforcement agencies.
[4] *See* Exhibit 12 to Affidavit of Counsel. Counsel for Mr. Rosenbaum notes that the Government failed to produce evaluations after 2001. Nor has the Government produced evaluations prior to 1996. *See* Affidavit of Counsel.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

employee evaluations recognize his effectiveness.    Here is his 2001 supervisor's evaluation of Mr. Rosenbaum's plea recognition skills:

> Mr. Rosenbaum conducts large numbers of plea negotiations with close attention to office policies, the need for consistency in plea offers and the goal of case advancement always in mind. He does an excellent job of balancing the benefits of cooperation with evaluation of defendant's truthfulness and use for advancing a case. He is able to juggle numerous overlapping investigations while considering appropriate pleas. However, if a plea breaks down, Mr. Rosenbaum is always willing to try the case. His work in this area has greatly advanced the offices OCDETF investigations.[5]

Mr. Rosenbaum was also recognized as an outstanding trial lawyer.    He substantially exceeded expectations in this regard:

> Mr. Rosenbaum is a superb trial attorney. The agents with whom he works constantly praise his organization, trial preparation and especially, his witness preparation. He is efficient and concise whil [sic] covering all issues. Mr. Rosenbaum works out witness and evidence problems before they appear in court. He puts together and presents highly complex drug investigations with great attention to detail and his preparation work is well reflected in his results.[6]

Mr. Rosenbaum was also recognized for his excellent legal research and writing skills. Again, from his evaluations, the following:

> Mr. Rosenbaum conducts excellent research and writing. His work always analyzes the issues in light of applicable precedents. He is persuasive and presents the United States' positions in a creative and appropriate manner. During the past rating period, he has stepped in to save certain cases in which suppression issues were not adequately briefed the first time. His work is generally timely. However, on occasion he has been late submitting briefs for review, which puts a strain on office resources. On the other hand, he is

---

[5] *See* Exhibit 13 to Affidavit of Counsel at DOJ0012.
[6] *Id.* at DOJ021. (2001 Evaluation).

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144                                    3
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

very willing to serve on court panels to prepare other lawyers for oral arguments.[7]

Mr. Rosenbaum was also consistently recognized as substantially exceeding expectations in the area of identifying, developing and structuring investigations:

> Mr. Rosenbaum does an excellent job of conducting and running investigations. He is able to run a number of investigations simultaneously keeping in mind the investigatory goal as well as necessary resource decisions. He considers the needs of the agencies and the cases in making decisions. He keeps supervisors apprised of the status of investigations.[8]

Indeed, Mr. Burgess, upon his elevation from an Assistant United States Attorney to United States Attorney in 2001, recognized Mr. Rosenbaum's outstanding efforts and awarded him a $3,000 bonus for his efforts.[9] This was not the first time that Mr. Rosenbaum was so recognized. He also received time off awards[10] and other monetary awards.[11]

2.   Burgess, Smith and Skrocki:

Former United States Attorney Tim Burgess, now a federal district court judge, was Mr. Rosenbaum's co-worker from approximately 1988 until his appointment by President George W. Bush in 2001 as the United States Attorney for the District of Alaska. As Assistant United States Attorney, Mr. Burgess was friendly with Mr. Rosenbaum, Mr. Rosenbaum assisted Mr. Burgess at his home with home repairs, as well

---

[7]   *See* Exhibit 14 to Affidavit of Counsel at DOJ0028 (1999 Evaluation).
[8]   *See* Exhibit 15 to Affidavit of Counsel at DOJ0037 (1998 Evaluation).
[9]   *See* Affidavit of Mark Rosenbaum, Exhibit 1 hereto.
[10]  *Id.*
[11]  *Id.*

as attending various social functions as a dinner guest.[12]   Upon his elevation to the position of United States Attorney, however, Mr. Burgess turned sharply against Mr. Rosenbaum.[13]

Mr. Burgess, sometime after his appointment as United States Attorney, requested that former Assistant United States Attorney Deborah Smith return to the District of Alaska. Ms. Smith and Mr. Rosenbaum had worked together during the first few years of Mr. Rosenbaum's employment at the Anchorage office in the 1980's. Then, however, Mr. Rosenbaum discovered that Ms. Smith had filed an affidavit with the Ninth Circuit seeking an extension of time, and Mr. Rosenbaum determined that the affidavit was materially false. He brought the matter to the attention of the then United States Attorney, Michael Spaan. Ms. Smith thereafter left the Anchorage office to work for the Department of Justice in several other cities. When she returned to Anchorage following Mr. Burgess' elevation to United States Attorney on 2001, she displayed obvious personal animus against Mr. Rosenbaum.[14]

Steve Skrocki joined the Anchorage office sometime between 1990 and 1992. Mr. Skrocki was not an accomplished trial lawyer. He still rarely tries a case by himself. Mr. Rosenbaum was never on friendly terms with Mr. Skrocki as he was with Mr.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[12]  *Id.*

[13]  *Id.*

[14]  *Id.*

Burgess.[15]    Mr. Skrocki became the office security officer for the United States Attorney's Office in Alaska through appointment by Mr. Burgess in 2001.[16]

In 2001, Mr. Rosenbaum had prosecuted a particularly complex methamphetamine drug case that involved several subjects associated with a violent motorcycle gang in Anchorage. As a result, Mr. Rosenbaum received threats, and one evening the tires on his vehicle were slashed outside a local restaurant under circumstances making it clear he had been followed there. Mr. Rosenbaum consulted with the DEA and U.S. Marshall Service (USMS) personnel who suggested that he obtain a concealed weapons permit and keep a firearm with him.[17]    Mr. Rosenbaum's life, in short, was significantly threatened. Mr. Rosenbaum did obtain a concealed weapons permit in 2001. He also reported this acquisition to Steve Skrocki.[18]

3.    Mr. Rosenbaum Encounters Increasing Hostility 2002-2003:

Mr. Rosenbaum, despite his over-achievements at the United States Attorney's Office, was weathering a difficult time for the then 54-year old man beginning in February 2002. A United States Probation Officer, whom he had dated prior to her employment as a probation officer, gave birth to his daughter, prematurely in August, 2002. Because Mr. Rosenbaum was not entertaining the idea of marrying the young woman, she withheld parental visitation privileges. Mr. Rosenbaum became engaged in a lengthy and acrimonious legal dispute with her, and this appears to have had some

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[15]  *Id.*

[16]  *Id.*

[17]  *Id.*

[18]  *Id.*

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                                          6
Points and Authorities in Support of Motion for Evidentiary Hearing

affect on his performance. The problems culminated in a driving under the influence arrest in Anchorage in August of 2002.[19] Mr. Rosenbaum immediately reported the circumstances to his superior, Deborah Smith.[20]

Mr. Rosenbaum was successful in obtaining shared custody of his daughter in 2003. A condition of the shared custody, however, was that Mr. Rosenbaum would submit to random urine tests for alcohol, and as well, participate in out-patient alcohol treatment.[21] Mr. Rosenbaum did so participate and has over 100 negative tests since then.

The Anchorage U.S. Attorneys Office knew that Mr. Rosenbaum was a single parent. It was also well known that Mr. Rosenbaum suffered from significant physical ailments. Due to severe corneal problems (Kerataconus), Mr. Rosenbaum was required to wear special contact lenses, which often required significant periods of time to insert. In addition, Mr. Rosenbaum was suffering from severe stomach and neck ailments.[22] Nonetheless, Mr. Rosenbaum continued to perform the multi tasks required of him as one of the senior experienced Assistant United States Attorneys in the Criminal Division.

In May 2003, eight months following the incident, Mr. Rosenbaum was notified that he would receive a 14-day suspension for conduct unbecoming of an Assistant United States Attorney, arising out of the DUI charge in August of 2002.[23] Mr. Rosenbaum retained a well known Anchorage employment law expert, Lee Holen, who

---

[19] Affidavit of Mark Rosenbaum.

[20] *Id.*

[21] *Id..*

[22] *Id.*

[23] *Id.*

FORTER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

prepared a defense, but was not permitted to appear in person for an oral hearing.[24]  Ms. Smith had recommended a 14-day suspension without pay.  United States Attorney Burgess reduced the period of suspension without pay to ten days, but nonetheless upheld the suspension.[25]

Mr. Rosenbaum served his ten days of suspension without pay in 2003.  When he returned to work, the hostile work environment only increased.  The hostile work environment appeared to be a result of Mr. Rosenbaum's occasionally arriving at work a few minutes late.[26]  Deborah Smith expressed anger at Mr. Rosenbaum's tardiness record.[27]  The occasioned tardiness initially appeared to be the issue that led to the May 12 false imprisonment, although the only stated reason was allegedly threatening unnamed employees.

4.  Skrocki, Burgess and Smith Conspire to Eject Mr. Rosenbaum: April-May 12, 2004:

On or about April 30, 2004, Mr. Skrocki, acting under instructions from Deborah Smith and Timothy Burgess, began to investigate how to ostracize Mr. Rosenbaum.

Burgess, Smith and Skrocki discussed a plan to remove Mr. Rosenbaum from the office, bar him from court appearances, and make his life so difficult he would take early retirement.  In pursuit of that goal, Skrocki devised a scheme to remove Mr. Rosenbaum from the office permanently.  Mr. Skrocki set out the following steps in a memo dated April 30, 2004:

---

[24]  *Id.*
[25]  *Id.*
[26]  *Id.*
[27]  *Id.*

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                                     8
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

    * Require Mr. Rosenbaum to surrender his Federal Building identification tag and the access card, notify GSI to disable the access card code. (There could be two cards or one combined access /ID card).

    * Remove Mr. Rosenbaum's vehicle identification stickers (the red sticker in the center of the windshield).

    * Disable any access codes utilized by Mr. Rosenbaum to gain access to the office space.

    * Obtain Mr. Rosenbaum's Assistant United States Attorney credential until the "adverse action is resolved".

    * Notify the FPS that Mr. Rosenbaum was not to enter the Federal Building without passing through the magnetometer.[28]

This April 30, 2004 memo was apparently concocted by Mr. Skrocki. According to documents recently obtained, Mr. Skrocki advised Burgess and Smith that:

> In late April 2004, in my capacity as District Office Security Manager (DOSM) I became aware about the possibility of a pending personnel action by the U.S. Attorney with regard to AUSA Mark Rosenbaum. The following information details my actions as DOSM with regard to the events leading up to, during and after the personnel action which occurred on May 12, 2004.[29]

Two days prior to the May 12 meeting, Mr. Skrocki apparently spoke with a "Tommie Barnes", whose office is not disclosed.[30] However, in notes that are largely illegible, Mr. Skrocki appears to have been an active player in the planning that involved assigning Mr. Rosenbaum to work at home for an indeterminate period of time.[31] Skrocki, Burgess and Smith fixed the date to disclose the assignment to Mr. Rosenbaum at 5 p.m., on May 12, 2004, when the office was closed.

---

[28] *See* Exhibit 17 to Affidavit of Counsel.
[29] *See* Exhibit 18 to Affidavit of Counsel.
[30] *See* Exhibit 19 at Batestamp US00153.
[31] *See* Exhibit 20 to Affidavit of Counsel.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

In notes, allegedly of a phone conversation with Mr. Barnes dated 5/10/04, Mr. Skrocki reported "Tommy agrees" that the procedure should involve pulling the cards, pulling the stickers, pulling the building ID.[32] Skrocki's note also demonstrate that the trio conspired to force Mr. Rosenbaum into an early retirement by September 2004. The approved plan was in place by May 10, 2004. Per the Plan, security was to be stationed near the two exits, from the US Attorney's Office. Mr. Rosenbaum should be permitted to obtain some of his personal things.[33] He would not be permitted to return ever. The office would box the rest of his things and ship them to him at some future time.[34]

Shortly after 5 pm on May 12, 2004, Mr. Rosenbaum was summoned to the USA Attorney's Conference Room. There, he was told to sit. Burgess had prepared notes for the occasion. According to the notes, he was to inform Mr. Rosenbaum that he would be on home duty because he was disruptive in the functioning of the office and in the fulfillment of the office's mission.[35] Mr. Rosenbaum only recalls Deborah Smith telling him that the action was being taken because of "more than one report of [Mr. Rosenbaum] threatening other employees."[36] Although a trial lawyer for the past 20 years, Mr. Rosenbaum was ordered to draft appeals for other lawyers. He was required to be reachable by his laptop e-mail and home phone from 8:30 to 5:30, except that the home detention would be relaxed for one hour from noon to 1:00.[37] The assignment was

---

[32] *See* Exhibit 20 to Affidavit of Counsel.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *See* Affidavit of Mark Rosenbaum.

[37] *Id.*

to be indefinite, but would be reviewed in 2 weeks. The matter was <u>not</u> considered disciplinary, but, rather, Mr. Rosenbaum was told that while he was out of the office, Mr. Burgess would apparently make a decision on appropriate disciplinary measures.[38] Mr. Rosenbaum was also warned that Burgess did not want "to jeopardize your possibility of early retirement, if it can be avoided."[39]

Mr. Rosenbaum was also ordered not to enter the Federal Building while on home duty without an escort.[40] Upon request, Mr. Rosenbaum surrendered his card key and the keys to the office. He was ordered to accompany the Office Security Manager, Mr. Skrocki, and an officer of the Federal Protective Service to his office while he collected his laptop and any personal belongings he may want to take home.[41]

Notably, the matter of an "escort" to accompany Mr. Rosenbaum to his car was not a part of the DOJ procedure, and was not represented as such by Mr. Burgess in his notes.[42] It is also noteworthy that when Mr. Skrocki spoke with "Tommy Barnes," he related to Mr. Barnes that Mr. Rosenbaum was to be placed on leave for two weeks.[43] This, of course, was also a misrepresentation.

The Government redacted the information that was provided to Mr. Barnes. Although the Court is privy to whatever the information was, Mr. Rosenbaum has not been so informed, and therefore, is unable to determine whether or not the statements

---

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                11
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

made by Mr. Skrocki to "Tommy Barnes" were also misrepresentations. Noteworthy, however, is that Mr. Skrocki learned, and he later related to Mr. Burgess and Ms. Smith, that the only steps authorized were those contained in the April 30 memo.[44] In neither document is there a suggestion that Mr. Rosenbaum was to be kept under tight guard after he was removed from the United States Attorney's Office.

Mr. Skrocki also relates additional events that occurred on May 12, but all four pages of those facts have been redacted from discovery produced by the United States.[45] It is believed that the Court is privy to the information, and has declined to order the United States to disclose the same to Mr. Rosenbaum.

Notwithstanding the U.S. Attorney's authority was limited to his office area, Mr. Rosenbaum was forced to accompany them to the Federal Building garage, which involved riding an elevator two stories down. There, they escorted Mr. Rosenbaum to his vehicle. He was ordered to place his box in the vehicle, to get into the vehicle, and to leave the premises and not to return.[46]

Burgess, Smith, Skrocki and Bleicher each exceeded his or her scope of employment when they did not allow Mr. Rosenbaum to leave, but kept him in custody and under their control until he drove his car out of the Federal Building garage. And that, Mr. Rosenbaum contends, constitutes false imprisonment under state law, and is not protected under federal law.

---

[44] *See* Exhibit 18 to Affidavit of Counsel.
[45] *See* Exhibit 19 to Affidavit of Counsel.
[46] *Id.*

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144    12
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

### III. **LEGAL ARGUMENT**

A.    Summary of Argument

Because the conduct in this case exceeded the scope of employment of the United States Attorney, the First Assistant United States Attorney, and the Assistant United States Attorney in this matter, and the Federal Protective Services, the Government's scope of employment certification[47] is in error, and the individual defendants in this case are not entitled to immunity under federal law, but rather, are individually subject to liability under state law. Because Assistant United States Attorneys are protected against unlawful actions by their superiors, unlawful actions by superiors are not within the scope of employment. United States Attorneys do not possess unlimited power. The conduct herein complained exceeded the limited authority of the individual defendants. Because their conduct was motivated not by a desire to serve the United States, but rather by a desire to humiliate Mr. Rosenbaum, each is subject to liability.

B.    Standard of Review

1. Westfall Act.

This case involves a lawsuit against federal employees. "When a federal employee is sued for a wrongful or negligent act, the Federal Employers' Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee was acting within the scope

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[47] *See* Exhibit B to Notice of Removal, Clerk's Docket No. 1.

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                              13
Points and Authorities in Support of Motion for Evidentiary Hearing

of his office or employment at the time of the incident out of which the claim arose . . .

28 U.S.C. § 28769(d)(1)."[48]

However, the Federal Tort Claims Act[49] immunizes the United States with respect

to "any claim arising out of assault, battery, false imprisonment . . . ."[50] Thus, in cases

such as the one at bar, in the event the intentional tort exception to the FTCA is

applicable, the United States is shielded from suit and "the plaintiff may be left without a

tort action against any party."[51] However, in the event the individual defendants were not

acting with the scope of employment, they are not entitled to protection under the

Westfall Act.

### 2. The Scope Certification is Subject to De Novo Review

It is now beyond dispute that the Attorney General's scope of employment

certification is reviewable, as a matter of law.[52]

The Attorney General's decision regarding the scope of employment certification

is subject to the *de novo* review by the district court.[53] Upon such challenge, this Court

must determine whether the Government employees acted within the scope of his or her

---

[48] *Guitierrez De Martinez v. Lamagno,* 515 U.S. 417,115 S. Ct. 27, 2229, 132 L.Ed.2d 375 (1995).

[49] 28 U.S.C. §2674.

[50] 28 U.S.C. §2680(h).

[51] *Guitierrez De Martinez v. Lamagno,* 115 S.Ct. 2229.

[52] *Id.,* 115 S.Ct. 2237; *Arthur v. U.S. by and through Veteran's Administration,* 45 F.3d 292, 296 (9th Cir. 1995); *Ross v. Brian,* 309 F.3d. 830, 835 (4th Cir. 2002); *Stokes v. Cross,* 327 F.3d 1210, 1215 (D.C. Cir. 2003); *Sullivan v. Shimp,* 324 F. 3d. 397 (6th Cir. 2003); *Counts v. Guevara,* 328 F. 3d 212 (5th Cir. 2003); *see also Haddon v. U.S.* 68 F.3d 1420, 1422 (D.C. Cir. 1995), rehearing denied 1996 (reversing certification in order to remand to the District of Columbia Superior Court).

[53] *See Green v. Hall,* 8 F.3d at 695, 698 (9th Cir. 1993); *Meridian Int'l Legistics, Inc. v. U.S.,* 939 F.2d 740, 745 (9th Cir. 1991).

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                        14
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

office. In doing so, the Court applies the *respondeat superior* principles of the state in which the tort occurred.[54] Mr. Rosenbaum bears the burden of presenting evidence and disproving the Attorney General's decision to grant the scope of employment certification by a preponderance of the evidence.[55]

### 3. Alaska *Respondeat Superior* law is Applicable

In reviewing the certification, federal courts must apply the law of the state in which the tortious act occurred.[56] Here, the plaintiff challenges the Attorney General's scope certification. Accordingly, this Court must determine whether, under Alaska law, the Defendants' actions in controlling Mr. Rosenbaum's departure, from the point he left the U.S. Attorney Office door until he was in his vehicle in the Federal Building garage and told to leave, exceeded the scope of employment.

It is clear that the immunity provided federal employees by the Westfall Act is limited "[t]o provide federal employees with immunity from suit for negligent acts taken within the scope of employment; but beyond that, 'the United States may not be substituted as a defendant and the individual employee remains liable.'"[57] These

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304 ANCHORAGE, ALASKA 99503 · TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[54] *Haddon*, 68 F.3d 1422; *Green v. Hall*, 8 F.3d 695, 698-99 (9th Cir. 1993).
[55] *Green*, 8 F.3d at 698; *Velez-Diaz v. Vega-Irazzy*, 421 F. 3d 70, 75 (1st Cir. 2005); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir. 1994); *Counts v. Guevara*, 328 F. 3d at 214; *Osborne v. Haley*, 422 F. 3d 359, 362 (6th Cir. 2005); *Arthur v. U.S.*, 45 F. 3d 292, 296 (9th Cir. 1995).
[56] *Counts*, 328 F. 3d 214; *Alverez Machain v. U.S.*, 331 F. 3d 604, 640 (9th Cir. 2003); *Cramer v. U.S.*, 240 F. 3d 1215, 1217 (9th Cir. 2001).
[57] H.R. 100-700 at 5, reprinted in 1988 U. S. C. C.A.N. at 5949.

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144                    15
Points and Authorities in Support of Motion for Evidentiary Hearing

individual Defendant's personal immunity, therefore, turns on the single question of the scope of employment, alone.[58]

A disputed issue of fact remains as to whether the Defendants were acting within the scope of their employment under Alaska law.

C. <u>U.S. Attorney Authority over Assistant U.S.Attorneys is Subject to Limitations</u>.

The government has previously argued that the U.S. Attorney has virtually unbridled discretion.[59] However, notwithstanding the website description of powers, the law is not so expansive. U.S. Attorneys, in fact, have not been delegated full authority in the area of personnel management. The Office of the United States Attorney is specifically controlled by the Civil Service provisions of Title V of the United States Code.[60] Significantly, the United States Attorney may not discipline Assistant United States Attorneys, or any other employee of his office for actions engaged in good faith reliance upon the advice of any agency ethics official.[61] The United States Attorney and the employees of that office are also subject to the standards of ethical conduct for employees of the Executive Branch.[62]

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[58] *See Guitierrez DeMartinez*, 115 S. Ct. at 2232.

[59] *See* Defendant's Opposition to Plaintiff's Motion for Limited Discovery, Clerk's Docket No. 25 at p.8, n.5, *citing* the website of the United States Department of Justice that "Each U.S. Attorney exercises wide discretion in the use of his/her resources to further priorities of local jurisdictions and needs of their communities. <u>United States Attorneys have been delegated full authority to control in the areas of personal management, financial management and procurement</u>" (emphasis in original.)

[60] *See* 28 U.S.C. § 549.

[61] <u>United States Attorneys Manual 1-4.101 (1998).</u>

[62] 5 C.F.R. § 3801.101.

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144                                                    16
Points and Authorities in Support of Motion for Evidentiary Hearing

In addition, the discretion of the Untied States Attorney with respect to personnel practices is further limited pursuant to 5 U.S. C. § 2302, which expressly prohibits certain personnel practices.  According to 5 U.S. C. § 2302(b):

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, <u>shall not</u> with respect to such authority -
>
> (1)    Discriminate for or against any employee or applicant for employment - -
>
> (A)    on the basis of race, color, religion, sex, or national origin . . .
>
> (B)    on the basis of age . . .
>
> (D)    on the basis of handicapping condition, as prohibited under Section 501 of the Rehabilitation Act of 1973; or
>
> (E)    on the basis of marital status or political affiliation, as prohibited under any law, rule or regulation;
>
> (2)    Solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on personal knowledge or records of the person furnishing it and consists of -
>
> (A)    an evaluation of the work performance, ability, aptitude or general qualifications of such individual; or
>
> (B)    an evaluation of the character, loyalty or suitability of said individual . . .
>
> (4)    Deceive or willfully obstruct any person with respect to such person's right to compete for employment . . .
>
> (8)    Take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee, applicant for employment because of -
>
> (A)    Any disclosure of information by an employee . . . which the employee reasonably believes evidences
>
> (i)    a violation of any law, rule or regulation or
>
> (ii)    gross mismanagement if such disclosure is not specifically prohibit by law . . .

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

> (10)   Discriminate for or against any employee . . .
> on the basis of conduct which does not adversely affect the
> performance of the employee . . . .

(emphasis added)

The Department of Justice's website banner that the United States Attorneys have been delegated full authority and control in areas of personnel management is thus demonstrably incorrect.  *See, Hamlett v. Dep't of Justice.*[63]  In *Hamlett*, the Merit Systems Protection Board concluded "that 28 U.S. C. §542 does not bring AUSAs outside of the coverage of 5 U.S. C. § 7511(a) . . . ."[64]  The Merit Systems Protection Board, therefore, sharply disagrees with the suggestion that Section 542 gives the Attorney General "unconditional" authority to dismiss any AUSA.  AUSAs do, in fact, have protectable property and liberty interests.[65]

D.   Alaska's Law of *Respondeat Superior* Controls Defendants' Liability.

1.   Alaska's Flexible Multi-Factual Test of Respondeat Superior.

Alaska courts apply "[a] flexible, multi-factored test" to determine whether an employee has acted in the scope of employment on a given case . . ."[66] Alaska courts applying the multi-factored test look to the relevant factors listed in Section 228 of the Restatement (Second) of Agency.[67]  According to the Restatement (Second) of Agency, § 228(2):

---

[63] *Hamlett v. United States Dep't of Justice*, 90 M.S.P.R. 674 (2002).

[64] *Id.* at 680.

[65] *Id.*

[66] *Donke v. Alyeska Pipeline Service Co., Inc.*, 137 P.2d 295, 300 (Alaska 2006).

[67] *Id.*

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144                                     18
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

> The conduct of the servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space or space limits, or too little actuated by purpose of serve the master.[68]

Under Alaska law, the determination of the scope of employment requires a case-by-case analysis.[69] Because Alaska has adopted a flexible, case-by-case analysis, even where the facts are undisputed, a jury can draw a conflicting inference about whether the conduct is within the scope of employment.[70] In determining scope of employment questions, the Alaska courts will consider the factors set forth in Restatement (Second) of Agency, §229 (1958).[71]

Importantly, Alaska courts must also consider evidence of an employee's motivation to determine whether or not the conduct was within the scope of employment. Thus, "imposing liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified.[72] Where an employee's testimony establishes that the employee had no desire to benefit the employer's business in conducting an otherwise authorized activity, such testimony is relevant to determine that the employee was not acting within the scope of employment.[73] The application of the facts to Alaska law demonstrates the Defendants exceeded the scope of their authority.

---

[68] Restatement (Second) of Agency, §228(2)
[69] *Ondrusek v. Murphy*, 120 P. 3d 1053, 1057 (Alaska 2005); *Luth v. Rogers & Babbler Construction co.*, 507 P.2d 761, 764-65 (Alaska 1973).
[70] *Luth*, 507 P.2d at 762.
[71] *Id.*
[72] *Veco, Inc. v. Rosebrook*, 970 P.2d 906, 924, n. 36 (Alaska 1999).
[73] *Ondrusek v. Murphy*, 120 P.3d at 1058.

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                    19
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

2.    The Defendants' Motives Are Relevant under Alaska Law.

This Court limited Mr. Rosenbaum's discovery to inquiry regarding whether the conduct in the case at bar was authorized.[74] The Court believed that the broad protection afforded by the Federal Tort Claims Act (FTCA) from personal liability from acts done within the scope of employment rendered motive, regardless of whether it is improper, or irrelevant. The Court stated:

> If the court were to accept Plaintiff's reasoning that animus or bad faith removes conduct from a government employee's scope of employment, these government employees would be denied the broad protection afforded them by the FTCA. Because motivation or intent of the Defendants are [sic] not at issue in whether defendants acted within the scope of employment, the court should not permit Plaintiff to conduct discovery on these issues in the context of the Accuracy of the Westfall certification.[75]

In fact, motivation is a significant factor in determining whether to impose liability under the Alaska law of *respondeat superior*.[76] In *Williams v. Alyeska Pipeline Service Co.*,[77] a bus driver was beaten by a group of union workers. The Court found evidence of motive to be an important factor in determining that the union bore *respondeat superior* liability, where the shop steward led an attack on a bus driver.[78] The Court found that the union steward was motivated, at least in part, by "a purpose to serve ... the cause of the

---

[74] *Id.* at 688.

[75] *Id.*

[76] *Veco, Inc. v. Rosebrook,* 970 P.2d 906, 924, n. 36, (Alaska 1999); *Ondrusek v. Murphy,* 120 P.3d at 1058.

[77] 650 P.2d 343 (Alaska 1982).

[78] *Id.* at 34.

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                    20
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

union <u>for he could have had no personal motive for his activities.</u>"[79] (emphasis supplied).

Thus, *respondeat superior* liability was imposed on the union.

Because Mr. Rosenbaum was not permitted to inquire into motive, then, by default, the Court may infer there was no personal motive on the part of these actors. That inference would be in error under Alaska law. The motivation for the continued exercise of control and dominion against Mr. Rosenbaum's person after Mr. Rosenbaum left the United States Attorney's Office remains a disputed issue of fact. If the motive was to terrify, humiliate, intimidate, or otherwise exercise unlawful dominion and control over him, then the conduct is not protected..

The Alaska Supreme Court has, in fact, considered motivation in a hostile work place and has determined that the supervisors causing hostile workplaces act beyond the scope of employment.[80] The Court has held:

> Often a hostile work environment is created by co-employees or supervisors acting <u>beyond the scope of their employment</u>. They are acting for personal reasons and not, even in part to serve their employer.[81]

Similarly, in *J & S Services, Inc. v. Tomter,*[82] the Alaska Supreme Court determined that motive is important to reach a determination in whether "deliberate and bad faith misconduct falls outside the scope of employment."[83] In *J & S Services, Inc.,* a procurement officer deliberately interfered with a bid procedure in order to steer the bid

---

[79] *Id.*

[80] *Veco, Inc. v. Rosebrook,* 970 P.2d 906, 910 (Alaska 1999).

[81] *Id.*

[82] *H & S Services, Inc. v. Tomter,* 139 P.3d 544 (Alaska 2006).

[83] *Id.* at 548.

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                    21
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

away from the plaintiff's company and towards a friend of the procurement officer.[84] Finding that the plaintiff had alleged sufficient facts that the procurement officer had engaged in bad faith and deliberate misconduct, the Court held that such would be outside the scope of the procurement officer's scope of employment.[85]

J & S Services, Inc. is also important in the Court's analysis of Alaska's law of *respondeat superior* because it concerns the conduct and motivation of a public employee. In *J & S Services, Inc.*, the employee performed the job for which he was employed – the award of a contract. He would, therefore, otherwise enjoy immunity under Alaska's Public Procurement Code. However, the court also examined the employee's conduct in light of his motive. The motive was personal gain. Accordingly, the Court imposed liability on the employee for acting outside the scope of his employment.

Similarly, here, notwithstanding the Attorney General's scope certification in the present case, the conduct complained of, coupled with the motivation, establishes that these Defendants acted outside the scope of their employment and are not entitled to *Westfall* protection.

In another recent Alaska Supreme Court case, the court also examined the importance of motive. In *Ondrusek v. Murphy*,[86] an employee of a horse ranch took his mother on a horseback ride at a time when the ranch was closed for business. The mother broke her leg. She sued the horse ranch. The Alaska Supreme Court approved the trial

---

[84] *Id.*
[85] *Id.*
[86] 120 P.3d at 1055.

*Rosenbaum v. Burgess, et al.*, Case No: 3:06-cv-144                                    22
Points and Authorities in Support of Motion for Evidentiary Hearing

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

court's denial of summary judgment, finding that, "Genuine issues of material fact exist regarding the scope of employment ...."[87] At trial, the business owner testified that guides were encouraged to ride on days off, in order to get more experience. The owner encouraged the guide's activities, even after hours. The employee, however, testified that his motive was not to assist the employer when conducting a free ride. The Court held the employee was not acting in the scope of employment. Consequently, there was no *respondeat superior* or liability and the jury could properly find that the business was not subject to liability on account of its actions.[88]

3.    The Defendants' Motive is Relevant in Light of the Restrictions on this Authority under Federal Personnel Law.

Federal law limits supervisors and co-employees in an additional way:  no employee is authorized to undertake prohibited personnel actions. Put another way, in this case, none of the actors was authorized to take, or to direct each other to take or approve personnel actions which discriminated against Mr. Rosenbaum on the basis of his religion,[89] his age,[90] or his marital status.[91] Nor were these Defendants authorized to solicit or to consider recommendations or statements, whether oral or written, based upon hearsay and previously disproved.[92] Nor were they authorized to discriminate against Mr. Rosenbaum on the basis of conduct which did not adversely affect his performance

---

[87]  120 P.3d at 1058.

[88]  120 P.3d 1058.

[89]  5 U.S.C. § 2302(b)(1).

[90]  5 U.S.C. § 2302(b)(1)(B).

[91]  5 U.S.C. § 2302(b)(1)(E).

[92]  5 U.S.C. S 2302(b)(2)(A).

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

or the performance of others.[93]  Thus, the motives of these actors in continuing to ride Mr. Rosenbaum on a rail after he was no longer permitted into the United States Attorney's Office is crucial to determining whether they, in fact, acted within the scope of their employment.

It is also clear, as a matter of fact, that the Defendants exceeded the authority allegedly given to them, vis-à-vis Mr. Skrocki's scarcely legible handwritten and allegedly contemporaneous notes of discussions with the Executive Office of the United States Attorney.  Those express instructions limit the control and dominion to escorting Mr. Rosenbaum out of the United States Attorney's Office.  There was nothing that authorized the conduct forming the basis of Mr. Rosenbaum's complaint of false imprisonment.

Indeed, Mr. Rosenbaum, even though he has not been permitted to inquire into motive, can establish discriminatory treatment, that is, motivation not authorized by law within the framework established by the Supreme Court in *McDonald Douglas Corp. v. Green.*[94]

Here, although Mr. Skrocki's later written memorandum appears to justify the actions taken in this regard as "standard operating procedure," Mr. Skrocki's own inquiry demonstrates that no one at the United States Attorney's Office in Anchorage had ever dealt with an AUSA in this manner.  Moreover, because of the severe limits imposed on Plaintiff's ability to conduct discovery, he was foreclosed from deposing any of the

---

[93] 5 U.S.C. § 2302(b)(10).

[94] *McDonald Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668.

Defendants. Skrocki's later, post May 12 typewritten memorandum has not been subjected to any cross-examination whatsoever. However, Mr. Rosenbaum makes an offer of proof that he believes that evidence exists that the Defendants in this case were motivated, from the time Mr. Rosenbaum was outside the office door on May 12, 2005, by hostility against Mr. Rosenbaum. They had no rational basis to continue to hold Mr. Rosenbaum in custody. This conduct thus constitutes disparate treatment.

Under Title VII analysis, the initial burden of showing actions from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based upon impermissible criteria.[95]

Mr. Rosenbaum can establish a *prima facie* case of disparate treatment by the evidence thus far produced in this case as follows:

(1). His is a member of a protected group;[96]

(2). He is similarly situated to individuals who are not members of the protected group;[97]

(3). He was treated more harshly than individuals who were not members of his protected group.[98]

---

[95] *Fernco Construction Corp. v. Waters,* 438 U.S. 567, 575-76, 98 S.Ct. 2943, 57 L.Ed. 2d 957 (1978).

[96] He is an unmarried parent of an infant; he is Jewish in an otherwise non-Jewish office; he had previously reported unethical conduct by a superior.

[97] The sole basis for Mr. Rosenbaum's removal from the United States Attorney's Office under the continued control and dominion of Burgess, Smith, Skrocki, Bleicher and the unknown Federal Protection Officer arose out of alleged threat to an unknown employee. *See* Affidavit of Mark Rosenbaum.

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

Indeed, Mr. Skrocki's note and his subsequent, after the fact memorandum, demonstrate that, in all the time Mr. Skrocki served as a security officer for the office, he had never before engaged in such conduct.

4.    Mr. Rosenbaum Has Established that the Conduct, Coupled With the
Ill-Will and/or Bad Faith Motivation in this Case is Outside the
Scope of Employment of the Respective Defendants

In this Court's discovery order, the Court criticized Mr. Rosenbaum's argument that motive was important in analyzing the scope of employment certificate. [99] The Court noted that the cases Mr. Rosenbaum relied upon focused "on whether the conduct was in the scope of employment, not solely what motivated conduct that would otherwise have been in place within an employee's scope of employment."[100] According to this Court's analysis in *Haddon v. U.S.,*[101] the gravaman was a threat by a federal electrician to beat up the White House chef. His conduct was held as outside the scope of employment.[102] In *Nadler v. Mann,*[103] the court found that the case turned on the Assistant United States Attorney's conduct, and the leaking of defamatory material to a news media.[104] In *Quick*

[98] No other Assistant United States Attorney in the 20 years that Mr. Rosenbaum has been employed at the United States Attorney's Office has ever been falsely imprisoned. *See* Affidavit of Mark Rosenbaum.
[99] Docket No. 24 at 5. Mr. Rosenbaum has now addressed the Court's corollary critique, that "Plaintiff has cited no authority that would support his position that bad motive itself would remove conduct from an employee's scope of employment. *Id.* The caselaw is contained at pp. 22-33, *supra.*
[100] Docket No. 29 at 5.
[101] 68 F.3d 1420 (D.C. Cir. 1995).
[102] *Id.*
[103] 951 F.2d 301 (11th Cir. 1992).
[104] Order at 5.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

*v. U.S.,*[105] an employee made false and defamatory statements as the basis for conduct outside the scope of employment.[106]

> In fact, in *Nadler* the Circuit Court held:

> An AUSA does not act within the cope of his employment when he leaks information regarding a criminal investigation to the news media.[107]

However, the Eleventh Circuit did not cite any statute, any regulation, any manual, or any support whatsoever for its statement. In *Nadler,* the salient fact appears to be that the judge who sued the AUSA for defamation was also involved in a contested judicial election with the same AUSA.[108] Thus, regardless of whether the Eleventh Circuit so stated, the issue was one of bad motive. Moreover, the Circuit Court specifically found that the fact that the AUSA was on vacation was insignificant.[109]

Similarly, in *Haddon v. U.S.,*[110] where an electrician threatened to beat up the White House chef, the D.C. Circuit found the conduct unrelated to the electrician's official duties. There, the conduct arose out of a good motive to serve the employer, the White House usher.[111] Here, the conduct itself was unlawful, unauthorized, constituted a prohibited action, exceeded the scope of employment, and also the express directions of the Executive Officer for United States Attorneys. In *Haddon,* although the Court held the electrician was not hired to discipline chefs on White House grounds, under federal

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

---

[105] 254 F. Supp. 2d 706 (S.D. Ohio 2002).
[106] Order at 5.
[107] *Nadler,* 951 F.3d at 306.
[108] *Id.* at 303.
[109] *Id.* at 306, n. 7.
[110] 69 F.3d 1420 (D. Cir. 1995) rehearing denied 1996.
[111] *Id.* at 371.

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144                                27
Points and Authorities in Support of Motion for Evidentiary Hearing

law, the electrician was also engaging in a prohibited employment practice: he was intimidating a co-employee who had filed a Title VII Complaint. Here, Burgess, Smith and Skrocki were not hired to intimidate a AUSA into early retirement.

In *Quick v. U.S.*, a supervisor sued a federal employee under state law, alleging that the employee had defamed him by publishing communications that he had sexually harassed the employee and discriminated against her on the basis of her race.[112]  In that case, the Court, <u>applying Ohio law</u>, held that false statements are outside the protection of a formal grievance procedure and, therefore, outside the scope of employment. Thus, the court held that, to the extent the defendant did not use a grievance process for its intended purpose, she did not act within the scope of employment.[113]  *Quick* stands for the proposition that motive <u>and</u> conduct both must be within the scope of employment. If, as in *Quick*, the process was not used for its intended purpose, the United States cannot properly substitute itself as a Defendant.[114]

In *Counts v. Guevara,*[115] two women, FBI employees, filed suit in Texas state court against a FBI agent alleging libel, slander and intentional infliction of emotional distress, claiming that Guevara "continuously and systematically harassed, intimidated and retaliated against them because they had complained to FBI Headquarters about him and his supervisors in El Paso."[116]  They also sued Guevara for his conduct at a

---

[112] 254 F.2d at 708.
[113] *Id.* at 715.
[114] *Id.*
[115] 328 F.3d at 212.
[116] *Id.* at 213.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

retirement dinner at which he made derogatory remarks about both of the plaintiffs.[117] The government filed a scope certificate, alleging the agent had acted within the scope of his employment.    Applying Texas law, the Fifth Circuit reversed the district court, holding that the court made improper inquiry when it focused its inquiry on whether the defendant's attendance at a retirement party was within the scope of his employment.[118] The circuit court held that the district court, in re-examining the application of Texas law, must focus its scope of employment inquiry on the tortious conduct.[119]   Clearly, tortious conduct involves either an intentional act or a negligent act and therefore involves both motive and conduct.   In *Guevara,* the agent's attendance at his retirement party itself may have been with the scope of employment.   However, if the motive in making defamatory comments at his retirement party was to defame, slander and emotionally injure the plaintiffs, then and in that case, it was not within the scope of his employment.

Similarly, here, if the bum's rush given to Mr. Rosenbaum from the United States Attorney's Office to the street was motivated by an intent to humiliate, hurt, injure, intimidation, terrorize or threaten, such is not within the scope of employment of Burgess, Smith, Skrocki, Bleicher and the unknown security officer.   Based upon the Skrocki memo of April 30, 2004, and the Burgess May 12, 2004 notes, there can be no doubt that the continuing control and dominion of Mr. Rosenbaum was inspired, motivated and caused by a desire to intimidate Mr. Rosenbaum.

---

[117] *Id.*
[118] *Id.* at 215.
[119] *Id.*

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

Under the facts of this case, and in the absence of further discovery, the Court must conclude that such is the case. Alternatively, Mr. Rosenbaum requests an additional opportunity to conduct discovery prior to an evidentiary hearing.

## IV. <u>CONCLUSION</u>

This state court case was removed upon the Government's scope certification. The scope certification was conclusory and stated only that the acts complained of in the complaint (which alleges only a single state claim of false imprisonment) were performed within the scope of employment of the Defendants. The limited discovery establishes that express instructions of authority were violated, that misrepresentations were made with respect to the proposed employment action, and that prohibited employment practices, after hours, and out of the United States Attorney's Office, were undertaken in an effort to intimidate and terrify Mr. Rosenbaum. The evidence also establishes that for 20 years Mr. Rosenbaum had an unblemished employment record, was a highly commended, extremely efficient and highly regarded trial lawyer for the United States Attorney's Office, District of Alaska, Criminal Division.

For the reasons stated herein, Mr. Rosenbaum is entitled to an evidentiary hearing and, further, the Court should find that the evidence preponderates in favor of a reversal of the scope certificate.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

RESPECTFULLY SUBMITTED this 5th day of January, 2007, at Anchorage, Alaska.

SAMUEL J. FORTIER
Attorney for Plaintiff

/ s /Samuel J. Fortier
FORTIER & MIKKO, P.C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503
Telephone No: (907) 277-4222
Facsimile: (907) 277-4221
E-mail: sfortier@fortmikk.alaska.com
AK Bar No. 8211115

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2007,
a true and accurate copy of the foregoing
was served electronically on:

Rebecca S. Cohen
Special Assistant Attorney General
District of Alaska
700 Stewart Street, Suite 5220
Seattle, WA 98101

/ s / Samuel J. Fortier

*Rosenbaum v. Burgess, et al.,* Case No: 3:06-cv-144
Points and Authorities in Support of Motion for Evidentiary Hearing

31

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221