JOHN McKAY
United States Attorney
Western District of Washington

REBECCA S. COHEN
Special Assistant U.S. Attorney
District of Alaska
700 Stewart Street, Suite 5220
Seattle, WA 98101
Phone: (206) 553-6526
Fax: (206) 553-4073
E-mail: rebecca.cohen@usdoj.gov
Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK ROSENBAUM,<br><br>      Plaintiff,<br><br>  v.<br><br>TIMOTHY A. BURGESS; DEBORAH M. SMITH; STEVE SKROCKI; TIM BLEICHER; and John Does I,<br><br>      Defendants. | Case No. 3:06-cv-00144-RJB<br><br>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND; OPPOSITION TO PLAINTIFF'S MOTION FOR EVIDENTIARY HEARING; AND IN SUPPORT OF DEFENDANTS' MOTION TO AMEND CAPTION AND SUBSTITUTE UNITED STATES AS DEFENDANT<br><br>**Ready for Consideration: Jan. 29, 2007** |

COMES NOW the defendants, Timothy Burgess, Deborah Smith, Steven Skrocki, and Timothy Bleicher (collectively "defendants"), by and through their attorneys, John McKay, United States Attorney for the Western District of Washington, and Rebecca S. Cohen, Special Assistant United States Attorney for the District of Alaska, and hereby file this memorandum of points and authorities in opposition to plaintiff Mark Rosenbaum's

Amended Motion to Remand, in opposition to plaintiff's Amended Motion for Evidentiary Hearing, and in support of defendants' Motion to Amend Caption and Substitute the United States as Defendant. This memorandum is based on the declarations of Tommie Barnes, Don Bowman, Timothy Bleicher, Timothy Burgess, Steven Skrocki, and Deborah Smith, all of which are submitted herewith.

## I. Introduction

As the Court is well aware, this case was brought by a former Assistant United States Attorney against various employees and former employees of the United States Attorney's Office for the District of Alaska and the Federal Protective Services. On June 13, 2006, a certification was filed stating that the defendants were acting within the scope of their employment at all times relevant to the lawsuit, and pursuant to 28 U.S.C. § 1679(d)(2), the United States was deemed to be the sole party defendant.

In order to circumvent an application of the Federal Tort Claims Act ("FTCA"), which would result in the dismissal of plaintiff's claims, and to hold the defendants individually liable for their alleged actions, plaintiff seeks to establish that the defendants were acting out of a personal animus towards him, and not within the scope of their employment. As discussed below, plaintiff has failed to meet his burden of establishing the defendants were not within scope. To the contrary, defendants' actions were part of and incidental to their regular job duties and responsibilities, and they were acting with the approval of their supervisors and/or the Executive Office for United States Attorneys. Under these circumstances, there should be no question that defendants were within the scope of their employment, and substitution of the United States as defendant is therefore mandated by the FTCA. In addition, no evidentiary hearing is necessary and the matter should not be remanded to state court.

II.  Background Facts

A.  The Parties and the Events Leading Up To May 12, 2004.

Plaintiff Mark A. Rosenbaum ("plaintiff") is a former employee of the United States Attorney's Office for the District of Alaska.  Rosenbaum Affidavit ¶ 2 (Dkt. No. 48).  He was employed by the U.S. Attorney's Office between 1984 and 2004 as an Assistant United States Attorney ("AUSA").  *Id*.

At all times relevant to this action, defendant Timothy M. Burgess, now a U.S. District Court Judge, was the U.S. Attorney for the District of Alaska.  Burgess Decl. ¶ 1. Defendant Deborah Smith, who was recently appointed as a Magistrate Judge for the District of Alaska, was the First Assistant United States Attorney at the U.S. Attorney's Office for the District of Alaska.  Smith Decl. ¶ 1.  Defendant Steven Skrocki was, and still is, an Assistant United States Attorney in the Criminal Division of the U.S. Attorney's Office for the District of Alaska.  Skrocki Decl. ¶ 1.  In addition, since 1992, AUSA Skrocki has been the District Office Security Manager ("DOSM") for the Office. Skrocki Decl. ¶ 2.  As DOSM, AUSA Skrocki is the principal security official for the District and advises the U.S. Attorney and First Assistant on all security matters.  Skrocki Decl. ¶ 3.

In May of 2004, after consultation with supervisors in the Office and attorneys in the Office of General Counsel at the Executive Office for U.S. Attorneys ("EOUSA"),[1] U.S. Attorney Burgess made the decision to place plaintiff on home duty effective May 12, 2004.  Burgess Decl. ¶ 2.  After the decision was made, U.S. Attorney Burgess and First Assistant Smith directed DOSM Skrocki to consult with the Assistant Director for

---

[1]  EOUSA is an office within the United States Department of Justice.  EOUSA provides the 93 United States Attorneys (and the 94 United States Attorney's Offices) with general executive assistance and direction, policy development, administrative management direction and oversight, operational support, and coordination with other components of the Department of Justice and other federal agencies.  These responsibilities include certain legal, budgetary, administrative, and personnel services, as well as legal education.  Barnes Decl. ¶ 3.

the Security Programs Staff at EOUSA,[2] Tommie Barnes, about what security measures, if any, should be taken with respect to the placement of plaintiff on home duty. Burgess Decl. ¶ 2; Skrocki Decl. ¶ 3; Smith Decl. ¶ 6.

During telephone conversations on May 10, 2004, Mr. Barnes told DOSM Skrocki that adverse personnel matters often require special security considerations due to the potential for violent emotional outbursts. Barnes Decl. ¶ 5. Accordingly, Mr. Barnes approved a plan in which after being told of his placement of home duty, plaintiff would be escorted from the Office (and to his office to retrieve personal belongings) by Federal Protective Service ("FPS") officers. Barnes Decl. ¶ 5; Skrocki Decl. ¶ 4. In addition, under the approved plan, DOSM Skrocki would deactivate plaintiff's access to the Office, and obtain his pass card, DOJ credential, building pass, and vehicle sticker. Barnes Decl. ¶ 5; Skrocki Decl. ¶ 4. After a meeting with plaintiff was scheduled for late in the afternoon on May 12, 2004, U.S. Attorney Burgess and First Assistant Smith directed DOSM Skrocki to proceed with plans to implement these instructions. Burgess Decl. ¶ 3; Skrocki Decl. ¶ 4; Smith Decl. ¶ 7.

Based on the direction he received from U.S. Attorney Burgess and First Assistant Smith, DOSM Skrocki contacted Supervisory FPS Officer Timothy Bleicher on May 10, 2004, and arranged for Officer Bleicher and another FPS Officer to provide escort services after plaintiff was informed of his placement on home duty. Bleicher Decl. ¶ 3; Skrocki Decl. ¶ 5. Due to FPS' duty to provide security and law enforcement services to tenant agencies, Officer Bleicher agreed to provide the requested escort services,[3] and the

---

[2] The Security Programs Staff provides policy and procedural assistance to the United States Attorney's Offices for the implementation and conduct of all aspects of security programs. Barnes Decl. ¶ 3.

[3] Officer Bleicher was not required to report to his supervisor each time he (or employees he supervised) escorted an individual from the building at the request of a tenant agency. Nor was he required to request permission to do so, as it was part of his regular job duties. Bleicher

plan was put into effect at the scheduled date and time. Bleicher Decl. ¶¶ 3, 6; Skrocki Decl. ¶ 5.

At the meeting on May 12, 2004, plaintiff was informed that due to concerns about security, his performance, and his behavior, he was being placed on a temporary assignment in which he was instructed to work from home. He also was directed to turn over his credentials as an Assistant United States Attorney. *See* Plaintiff's Memorandum in Support of Opposition to Scope Certification, at 5 (Dkt. No. 13-2). In the letter he received from U.S. Attorney Burgess at the meeting, plaintiff was "advised that as of May 13, 2004, you will be placed on a work-at-home schedule where you will continue with your full-time work duties. Until further notice, your official duty station will be your home . . . ." The letter went on to explain as follows:

> Your access to the United States Attorney's Office for the District of Alaska is suspended during this time period. Accordingly, today you will surrender your access card, key to your office, and car sticker that provides access to the garage. Your access code will be cancelled effective the close of business May 12, 2004. Thus, you are not authorized to enter the office without an escort during this time period. If you require access to the office for any reason, you must request permission from Ms. Tucker in advance and, if approved, an escort will be provided for you.

Defendants' Response in Opposition to Motion for Discovery, Ex. A (Dkt. No. 25).

B. <u>This Action</u>.

On May 11, 2006, plaintiff filed a Complaint against defendants Timothy A. Burgess, Deborah M. Smith, Steve Skrocki, Tim Bleicher, and John Doe 1 in the Superior Court for the State of Alaska, Third Judicial District. *See* Complaint (Dkt. No. 1-2). In his Complaint, plaintiff alleges that on or about May 12, 2004, he was unlawfully imprisoned by the defendants at the U.S. Attorney's Office in Anchorage. Complaint

Decl. ¶ 5; Bowman Decl. ¶ 3.

¶¶ 4-9.   Specifically, plaintiff alleges that after being summoned to the meeting on May

12, 2004, he was "escorted by Defendant Steven Skrocki, Defendant Bleicher and

Defendant John Doe I to his office, where those defendants provided Plaintiff with a

cardboard box, ordered Plaintiff not to leave, and gave Plaintiff 10 minutes to pack the

box, while Defendants guarded Plaintiff and prevented him from leaving the room."

Complaint ¶ 8 (Dkt. No. 1-2).

On June 13, 2006, the United States removed the case to this Court pursuant to 28

U.S.C. § 2679(d), because the defendants were acting within the scope of their office or

employment at all times relevant to plaintiff's allegations.  *See* Notice of Removal (Dkt.

No. 1-1).  In addition, the United States filed a Certification from Phyllis J. Pyles,

Director, Torts Branch, Civil Division, United States Department of Justice, that stated as

follows:

> On the basis of the information now available to me with
> respect to the allegations in Plaintiff's Complaint, I certify
> that all of the Defendants including former U.S. Attorney
> Timothy M. Burgess, former First Assistant U.S. Attorney
> Deborah M. Smith, Assistant U.S. Attorney Steve Skrocki,
> and Federal Protective Service officers Tim Bleicher and John
> Doe I, were acting within the scope of their respective
> employment as employees of the United States at the time of
> the conduct alleged in Plaintiff's Complaint.

Pyles Certification (Dkt. No. 1-3).  Accordingly, pursuant to 28 U.S.C. § 2679(d)(2), this

case was "deemed an action against the United States . . . ."[4]

In response to the Pyles Certification, plaintiff has alleged that the individual

defendants were not acting within the scope of their employment, and the Court allowed

---

[4] Also on June 13, 2006, the United States filed a Notice of Substitution, as well as a
motion asking the Court to amend the caption of this case to substitute the United States as the
sole party defendant in place of the individually named defendants.  *See* Dkt. No. 4-1.  That
motion is now ready for consideration at the same time as plaintiff's Amended Motion for
Remand and Amended Motion for Evidentiary Hearing.

limited discovery into the issue of scope.  *See* Court's Order of September 18, 2006 (Dkt. No. 29).  Discovery has now been concluded, and plaintiff has asked the Court to (1) order an evidentiary hearing on the issue of scope of employment; and (2) remand the case to state court.  For the reasons discussed in detail below, defendants respectfully ask the Court to deny these requests and to grant their motion to amend the caption and substitute the United States as the sole defendant in this action.

III.  <u>Argument and Authority</u>

    A.  <u>The Relevant Statutory Scheme and Procedural Framework</u>.

The Federal Tort Claims Act ("FTCA") prohibits tort actions against individual employees of the United States for "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of [the] employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b).  In such cases, the plaintiff's sole remedy is to pursue recovery from the United States.  *Id*.  Where a suit is instituted against an employee of the United States under these circumstances, and upon certification by the Attorney General or his delegee that the employee was acting within the scope of his employment, the action "shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(2) (emphasis added).  "The Attorney General's decision regarding scope of employment certification is conclusive unless challenged."  *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993).

After a scope certification has been filed, the "plaintiff may challenge the Attorney General's scope of employment certification in the district court."  *Green*, 8 F.3d at 698; *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995).  When this type of challenge is made, **"the party seeking review bears the burden** of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment

certification by a preponderance of the evidence." *Green*, 8 F.3d at 698 (emphasis added). "In determining whether a United States employee acted within the scope of his or her office . . . the Court appl[ies] the respondeat superior principles of the state in which the tort occurred. . ." *Green*, 8 F.3d at 698-99. "The Westfall Act, in conjunction with the FTCA, makes clear that a plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope of employment issue, even if the relevant state law would provide a jury trial." *Gutierrez de Martinez v. Drug Enforcement Agency*, 111 F.3d 1148, 1153 (4th Cir. 1997).

B. <u>Defendants Were Acting Within the Scope of Their Employment</u>.

As explained above, whether the individual defendants were acting within the scope of their employment is governed by law of the state in which the alleged tort occurred, in this case the law of Alaska. *Green*, 8 F.3d at 698-99. Notably, "Alaska views scope of employment liberally." *U.S. v. Cheely*, 814 F. Supp. 1430, 1443 n. 14 (D. Alaska 1992). The Supreme Court of Alaska follows the Restatement (Second) of Agency's provision regarding scope of employment, found in Section 228, which reads as follows:

> (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Taranto* v. *North Slope Burough*, 909 P.2d 354, 358 (Alaska 1996); Restatement (Second) of Agency § 228. The party seeking to establish scope does not need to satisfy each of the factors in Section 228 for an employee to have acted in the scope of his or her employment. Instead, "the Second Restatement's factors are relevant considerations but are not determinative of the respondeat superior analysis." *Taranto*, 909 P.2d at 359.

In the case before this Court, an examination of the relevant factors leads to the conclusion that the individual defendants were acting within the scope of their employment. First, the alleged conduct by the individual defendants was "the kind [they were] employed to perform." There is no dispute that the actions taken by then-U.S. Attorney Burgess and then-First Assistant Smith were related to personnel decisions concerning the terms and conditions of plaintiff's employment. Such personnel decisions, and the corresponding actions that stemmed from them, are the kind of activities performed by the top two officials in the Office of the United States Attorney. And, as explained in the Barnes Declaration, "U.S. Attorneys have the ability to restrict access to the Office beyond the reception area, including access by employees. U.S. Attorneys and their delegees, including District Office Security Managers and First Assistants, can request FPS officers to escort individuals out of the Office. . . ." Barnes Decl. ¶ 4. Furthermore, U.S. Attorney Burgess, First Assistant Smith, and DOSM Skrocki were acting under the guidance of, and with specific approval from, Tommie Barnes at EOUSA. First Assistant Smith was acting with the approval of her supervisor, U.S. Attorney Burgess, and DOSM Skrocki was following the orders of Burgess and Smith.[5]

Similarly, part of the general job duties and responsibilities of FPS officers is to provide "escort services for tenant agencies, at the request of the tenant agency." Bowman Decl. ¶ 3. It is clear from both Officer Bleicher's job description and the declaration of Don Bowman, FPS' Regional Director, that the actions taken by Officer

---

[5] Plaintiff has alleged (and defendants dispute) that DOSM Skrocki exceeded the scope of the authority given to him by Mr. Barnes, U.S. Attorney Burgess, and First Assistant Smith, when he followed through on the instructions he had been given and directed the FPS Officers to escort plaintiff after the meeting on May 12, 2004. Even if this were true, the scope analysis would not change, as authority is not completely synonymous with scope. In the *Doe* case discussed below, for example, the therapist certainly was not authorized by his employer to engage in sexual acts with his patient, but the Court still believed that he was within the scope of his employment.

Rosenbaum v. Burgess, et al.
Case No. 3:06-cv-00144-RJB                    9

Bleicher are of the "kind he [or she] is employed to perform."

Second, the alleged conduct was "substantially within the authorized time and space limits," as it occurred late in the afternoon at the Office of the U.S. Attorney. As indicated by the word "substantially," it makes no difference that the office may have been closed to the public at the time. In *Doe v. Samaritan Counseling Center*, 791 P.2d 344 (Alaska 1990), a case with facts much more egregious than what is alleged here, the Court held that even though the alleged tortious behavior (sexual acts by a therapist with his patient) occurred roughly one month after counseling ended and away from the employer's premises, a "trier of fact might reasonably conclude. . . that it was not 'too far' removed from authorized time and space limits." *Samaritan Counseling Center*, 791 P.2d at 349.

Third, although motivation to serve the employer is a relevant element to establish scope, "where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been established." *Samaritan Counseling Center*, 791 P.2d at 348; *see also Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093, 1099 (Alaska 2002).[6] As discussed with respect to the first element above, the alleged actions of the defendants arose out of and were "reasonably incidental to the employee's legitimate work activities." Judge Burgess and Smith, the U.S. Attorney and First Assistant U.S. Attorney at the time, were engaging in disciplinary and personnel-related functions that are encompassed in their roles as the leading officials at the U.S. Attorney's Office. Skrocki and Bleicher, on the other hand, were conducting

---

[6] The Supreme Court of Alaska has clarified this standard to mean that the employee must have acted, at least in part, to serve the employer. *See Laidlaw Transit*, 53 P.3d at 1099 n. 15 (explaining *VECO, Inc. v. Rosebrook*, 970 P.2d 906, 924 n.36 (Alaska 1999)). As the Court made clear in *Laidlaw Transit*, however, it still remains the case that "'where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been satisfied.'" *Laidlaw Transit*, 53 P.3d at 1099.

safety/escort services, which are part and parcel of their duties as the district office security manager and FPS officer.[7]

The *Doe v. Samaritan Counseling* decision demonstrates that the "motivation to serve" test has been satisfied here. After analyzing particularly egregious facts, the *Samaritan* Court recognized that the therapist may not have had a desire to benefit his employer when engaging in a sexual relationship with his patient, but held that "it could reasonably be concluded that the resulting sexual conduct was 'incidental' to therapy." *Samaritan Counseling Center*, 791 P.2d at 348. Accordingly, the Court reversed the trial judge's finding that the therapist was not acting in the scope of his employment, and found that there was evidence to support plaintiff's *respondeat superior* claim. Because the alleged conduct of the individual defendants in this case also arose out of and was "incidental to" their job duties, the same logic applies here.

Plaintiff's pleadings seem to imply that defendants were not within scope because their actions were intentional. Defendants expressly deny plaintiff's factual allegations, although this makes no difference with respect to the scope analysis. As the Supreme Court of Alaska explained in *Taranto*, under Alaska law, "an employer will be held liable for both negligent and **intentional** torts of its employee, if the employee 'is acting in the scope of his employment.'" *Taranto*, 909 P.2d at 358 (emphasis added); *see also Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 349 (Alaska 1982) ("A master is liable for the torts of a servant committed while the servant is acting in the scope of his employment. This liability covers both negligent and intentional torts.") (internal

---

[7] Defendants recognize that the facts put forth in plaintiff's pleadings differ slightly from the facts they have presented herein; namely, plaintiff alleges that he was prevented from leaving his office during the time period in which he gathered his personal belongings, an allegation that defendants dispute. This factual conflict, however, makes no difference with respect to the specific question at hand, to wit, whether the defendants were acting within the scope of their employment. Under either factual scenario, the activities arose out of and were reasonably incidental to the defendants' legitimate work activities.

citations omitted).

Plaintiff also attempts to avoid a finding that defendants were within scope by arguing that because they were allegedly acting out of a personal animus towards him, they were not within the scope of their employment.  The Court has already rejected this argument.  In its Order of September 18, 2006, the Court explained as follows:

> However, plaintiff's reasoning that, because defendants'
> actions were motivated by personal animus, their conduct fell
> outside the scope of their employment, is flawed.  The issue
> regarding scope of employment is whether the *conduct* at
> issue fell within the scope of the duties and authority of
> defendants' positions as employees of the United States, not
> *why* they performed those acts.  Defendants' motivations
> regarding that conduct may, or may not, be relevant to the
> underlying legal claim, but are not relevant to the scope of
> employment inquiry.

Order at 5 (Dkt. No. 29).

Although the United States' research did not uncover any Alaska decisions that are exactly on point with respect to the issue of animus, FTCA case law from other jurisdictions demonstrates that personal animus should not alter the scope of employment analysis.  In *Maron v. United States*, 126 F.3d 317 (4th Cir. 1997), the plaintiff, a physician employed by the National Institutes of Health ("NIH"), brought various tort claims against five of his NIH coworkers.  The United States filed a scope certification, which was subsequently challenged by the plaintiff, who argued that because the individual defendants were acting out of personal animus, they were not within the scope of their employment.  While rejecting the scope challenge and finding that the individual defendants had acted within the scope of their employment, the Fourth Circuit explained: "Even if the defendants harbored ill will for Maron, we will not look at that ill will alone, but must look at the alleged acts and the doctor's duties at the NIH in making the decision about whether they were acting within the scope of employment."  *Maron*, 126 F.3d 317.

Likewise, in *Martinek v. United States*, 254 F. Supp.2d 777 (S.D. Ohio 2003), the plaintiff, a radiologist who formerly served at an Air Force medical facility, brought an action against his former Air Force supervisors. The claims stemmed from disciplinary actions that had been instituted by the supervisors against plaintiff. The plaintiff challenged the United States' scope certification, arguing that the individual defendants had been acting out of animus, and were therefore outside the scope of their employment. Applying Ohio law on scope,[8] the Court rejected plaintiff's argument and held that the substitution of the United States as the sole party defendant was proper:

> Even accepting that Colonel Voss had a strong personal dislike for Major Martinek and was looking for an excuse to reprimand him, none of Major Martinek's allegations sever Colonel Voss' employment relationship with the United States Air Force. Rather, Colonel Voss' alleged conduct, even assuming that it contravened Air Force regulations and was motivated (at least in part) by animosity, was taken within the scope of his supervisory relationship with Major Martinek . . . Accordingly, the Court concludes that Colonel Voss acted within the scope of his employment. The substitution of the United States for Colonel Voss was, therefore, appropriate.

*Martinek*, 254 F.Supp. 2d, at 787. Like the defendants in *Maron* and *Martinek*, the defendants in this case were performing duties that arise out of and are reasonably related to and part of their legitimate work activities, and they were therefore within the scope of their employment. In addition, it should be noted that while the federal cases cited by defendants support the proposition that personal animus is not relevant to the issue of scope, the federal cases cited by plaintiff do not support the contrary position. In fact, the Court rejected plaintiff's argument based on the same cases in its Order of September 18, 2006. *See* Order at 5 ("The cases plaintiff cites in support of his argument that defendants

---

[8] In making scope determinations, Ohio courts also examine the factors set forth in Section 228 of the Restatement. *See, e.g., Martinek*, 254 F. Supp.2d at 783.

were not acting within the scope of their employment because their actions were motivated by ill will or bad faith are not on point.").

Finally, plaintiff's analogy to federal personnel law is inapposite.  As a preliminary matter, plaintiff has not asserted an employment discrimination claim in this case, and cannot do so because he failed to invoke the proper administrative process.[9] Furthermore, even if the defendants were acting out of a discriminatory intent (which they sharply dispute), this would not mean that the defendants were acting outside of the scope of their employment.  Although plaintiff would potentially have an employment discrimination claim if this were the case, this has no impact on the question of scope.  It is precisely because the defendants were acting within the scope of their employment that the Government could potentially be held liable for their actions through an employment discrimination claim.  (If, in fact, the defendants were acting out of a discriminatory intent, which they were not.)  Thus, plaintiff's allegation that he has established a prima facie case of disparate treatment, even if true, would make no difference with respect to the determination of whether defendants acted within the scope of their employment.

C.  Plaintiff is Not Entitled To An Evidentiary Hearing on the Scope Issue.

In cases such as this, district courts are empowered to order evidentiary hearings to inquire into the issue of scope of employment, but only where certain requirements are satisfied.  "Only if the district court concludes that there is a genuine issue of fact material to the scope-of employment issue should the federal employee be burdened with discovery and an evidentiary hearing."  *Gutierrez de Martinez*, 111 F.3d at 1155; *see also Koch v. United States*, 209 F. Supp.2d 89, 93 (D.D.C. 2002) ("the Court finds that even accepting *arguendo* plaintiff Koch's unsupported factual allegations, it is clear that

---

[9]  In order to assert claims of gender discrimination under Title VII in federal court, a plaintiff must first have timely filed a complaint of discrimination with his or her employing agency.  *Leorna v. United States Department of State*, 105 F.3d 548, 550 (9th Cir. 1997).

Rosenbaum v. Burgess, et al.
Case No. 3:06-cv-00144-RJB                    14

[defendant] was acting within the scope of his employment.  No discovery or evidentiary hearing on this matter is necessary, so plaintiff Koch's Motion for Discovery will be denied.").

Plaintiff seeks to establish through an evidentiary hearing that defendants exceeded the scope of their employment by acting out of personal animus.  Plaintiff so explained in his Affidavit of July 14, 2006:

> Each of the individuals involved in the meeting who detained
> me, escorted me to my office, then to the elevator and thence
> to my vehicle in the garage did so without any rational or
> factual basis and out of total personal animus, without any
> honest motivation with respect to their employment.

Affidavit of Mark A. Rosenbaum ¶ 3 (Dkt. No. 12-4).  Plaintiff's Amended Motion for Evidentiary Hearing should be denied because this factual allegation, even if taken as true for the purposes of the Motion, would not establish that the individual defendants acted beyond the scope of their employment.  As discussed in detail above, the alleged animus of the defendants has no relevance to the scope determination because defendants' actions arose out of and were "incidental to" their job duties.  Thus, the requirement set forth in *Gutierrez de Martinez* is not met because there is "no genuine issue of fact material to the scope of employment issue."

D.  The Case Must Remain in Federal Court – Remand is Not Appropriate.

Even if the Court were to find that defendants were not acting within the scope of their authority, remand to state court is not appropriate because although the Attorney General's certification is judicially reviewable with respect to substitution, it is conclusive as to removal.  *See* 28 U.S.C. § 2679(d)(2) ("This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.").  A plurality opinion of the United States Supreme Court has endorsed this position.  In *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995), the case in which the Supreme Court held that scope certifications are reviewable with respect to substitution, a four

justice plurality wrote as follows when discussing whether a case should be remanded after a district court determines that the federal employees were not acting within the scope of their employment:

> Whether the employee was acting within the scope of his federal employment is a significant federal question – and the Westfall Act was designed to assure that this question could be aired in a federal forum. . . . "[C]onsiderations of judicial economy, convenience and fairness to litigants," ***make it reasonable and proper for the federal forum to proceed beyond the federal question to final judgment*** once it has invested time and resources on the initial scope-of-employment contest.

*Id*. at 435-36 (emphasis added, internal citations omitted).[10]

Plaintiff's opposition brief quotes a portion of the relevant language from the *Gutierrez de Martinez* decision, but conveniently leaves out the most important part of the sentence (i.e., the portion highlighted in the block quote above). *See* Amended Motion to Remand at 5. As the full quote demonstrates, *Gutierrez de Martinez* supports, not contradicts, defendants' position that remand is not appropriate. In addition, although the Ninth Circuit has not addressed the question of remand since *Gutierrez de Martinez*, a pre-*Gutierrez de Martinez* decision from the Ninth Circuit held that a scope certification is reviewable only with respect to substitution.

> In light of the language and the Reform Act's comparative silence as to the conclusive effect of certification on substitution, the inference is that 'Congress intended to make scope certification unreviewable only with respect to removal' and not with respect to substitution.

*Meridian Intern. Logistics, Inc. v. United States*, 939 F.2d 740, 744 (9th Cir. 1991).

---

[10]  In a concurring opinion, Justice O'Connor did not address the merits of this issue, instead opining that it was not before the Court and should not be discussed. Likewise, the dissenting justices did not address the question of removal, as they were focused on an argument that certifications should not be subject to review at all, even with respect to substitution.

Rosenbaum v. Burgess, et al.
Case No. 3:06-cv-00144-RJB                    16

While the Ninth Circuit has not addressed the issued again since *Gutierrez de Martinez*, numerous other Circuits have, and only the D.C. Circuit[11] has concluded that remand would be appropriate after a district court finds that the defendants were not within scope. The Fourth, Fifth, and Sixth Circuits, on the other hand, have all agreed that remand is prohibited in such circumstances, and the Third Circuit came to the same conclusion in a decision pre-*Gutierrez de Martinez*. *See Osborn v. Haley*, 422 F.3d 359, 365 (6th Cir. 2005) ("We agree with the majority view that the clear language of the Act forecloses remand); *Borneman v. United States*, 213 F.3d 819, 829 (4th Cir. 2000) ("Should the district court conclude, after resolving all material facts, that McCaley was not acting within the scope of his employment, McCauley must be resubstituted as the defendant in this case. But the district court may not thereafter remand the case to state court."); *Garcia v. United States*, 88 F.3d 318, 327 (5th Cir. 1996) ("The Westfall Act basis is grounded in what we read as a clear and constitutional directive by Congress that removed actions with an Attorney General certification are to remain in federal court."); *Aliota v. Graham*, 984 F.2d 1350, 1357 (3d Cir. 1993) ("Congress, by expressly stating that the Attorney General's certification is 'conclusive' as to jurisdiction, has prohibited a district court from using its disagreement with the Attorney General's scope of employment certification to deny jurisdiction and so send the case back to the state court where it originated.").

Given the plain language of the statute, the *Gutierrez de Martinez* Supreme Court decision, the Ninth Circuit's decision in *Meridian Intern. Logistics*, and the fact that the majority of other circuits to have addressed the issue are in agreement, the defendants respectfully submit that remand is not appropriate in this case. (This issue, of course, need not even be addressed, as the defendants were acting within the scope of their employment.)

---

[11] *Haddon v. United States*, 68 F.3d 1420 (D.C. Cir. 1996).

    E.  <u>The United States Should Be Substituted As Defendant</u>.

Plaintiff has failed to meet his burden of establishing that the defendants were not acting within the scope of their employment. Accordingly, the Certification of Phyllis Pyles establishes that defendants were in fact in scope, and the defendants ask the Court to substitute the United States as the sole defendant in this action and to amend the caption accordingly. *See Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir. 1991) (the "Act mandates both the substitution of the United States as the defendant, and, if initiated in state court, the removal of the action to the United States District Court."); *SJ&W Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990) ("the United States is substituted as an automatic consequence of the Attorney General's certification."); *Robinson v. Marano*, 79 F. Supp.2d 96, 97 (N.D.N.Y. 2000) ("The substitution of the United States as the defendant is an *automatic consequence* of the U.S. Attorney's (acting through as Assistant United States Attorney and on behalf of the Attorney General) certification.").

## IV. <u>Conclusion</u>

Defendants deny that their actions on May 12, 2004, stemmed from a personal animus towards plaintiff and dispute many of the factual allegations raised in plaintiff's pleadings. For the purpose of the scope challenge, however, these allegations make no difference, as motivation is not relevant into the scope inquiry. Because defendants actions arose out of and were incidental to their positions, they were acting within the scope of their employment. Accordingly, the United States respectfully asks the Court to deny plaintiff's Amended Motion for Evidentiary Hearing, to deny plaintiff's Amended Motion for Remand, and to grant defendants' Motion to Amend Caption and Substitute United States. A proposed form of order granting the defendants' requested relief is submitted herewith for the Court's consideration.

Respectfully submitted this 19th day of January, 2007.

JOHN McKAY
United States Attorney
Western District of Washington

/s/ Rebecca S. Cohen
Rebecca S. Cohen, WSBA #31767
Special Assistant U.S. Attorney
District of Alaska
700 Stewart Street, Suite 5220
Seattle, WA 98101
Phone: (206) 553-6526
Fax: (206) 553-4073
E-mail: rebecca.cohen@usdoj.gov
Attorney for the Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2007,
a copy of the foregoing Memorandum of Points
and Authorities was served electronically
on Samuel J. Fortier

/s/ Jing Y. Xu