SAMUEL J. FORTIER
FORTIER & MIKKO, P.C.
101 West Benson Blvd., Suite 304
Anchorage, AK 99503
Telephone: (907) 277-4222
Facsimile: (907) 277-4221
Email: sfortier@fortmikk.alaska.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK A. ROSENBAUM, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:06-00144-RRB |
| v. ) | |
| ) | |
| TIMOTHY A. BURGESS, DEBORAH ) | |
| M. SMITH, STEVE SKROCKI, TIM ) | |
| BLEICHER, and JOHN DOE I, ) | **REPLY BRIEF** |
| ) | |
| Defendants. ) | |
| _____ ) | |

I.  INTRODUCTION

Mark Rosenbaum was a senior, experienced, and highly decorated Assistant United States Attorney stationed at the Anchorage Office of the United States Attorney on May 12, 2004. He had over 20 years experience at that time. His job was to try complex drug cases. On May 12, 2004, he was stripped of his credentials and told not to return to the United States Attorney's office. He was escorted to his office by two armed Federal Protective Services Officers and Assistant United States Attorney Steven Skrocki, and told he could not leave and that he had 10 minutes to pack a box. Then, he was escorted out of the United States Attorney's office, through the reception area, out

the door, to the elevator, down the elevator to the basement parking garage, to his vehicle. He was ordered into the vehicle, and told to leave and not return.

Mr. Rosenbaum was falsely imprisoned. He is seeking damages under state common law. The defense asserts that the conduct was within the scope of employment of the actors, Timothy Burgess, Deborah Smith, Steven Skrocki, Timothy Bleicher and Travis Just. However, the government's own proof establishes that none of the actors had authority to detain Mr. Rosenbaum outside of the U.S. Attorney's Office. Burgess, Smith and Skrocki created a myth of "violent emotional outburst" to cloak a plan cooked up over a period of months to break Mr. Rosenbaum, not to advance or further the interests of the United States, but for their own personal reasons.

Mr. Rosenbaum seeks an evidentiary hearing in which to establish that the individuals sued acted outside the scope of their employment. The evidence thus far adduced establishes that there is a genuine issue of material fact: whether the continuing dominion and control exercised over Mr. Rosenbaum was within the office or scope of employment of these actors. Under Alaska law, Mr. Rosenbaum is entitled to a jury trial to consider these facts. Under federal law, he is entitled at least to an opportunity to present his case to the Court.[1]

## II. RESTATEMENT OF FACTS

The Defendants' recollection of facts is at odds with their more contemporaneous writings. In contrast to the government's assertions that Burgess decided to place Mr.

---

[1] In *Osbourne v. Haley*, ____ U. S. _____ (Jan. 22, 2007), the United States Supreme Court held that removal jurisdiction under the Westfall Act, 28 U.S.C. 2679(d) prohibits the Court from remanding a case to the state court following denial of a scope certificate. Slip Op. at 15. In view of *Osbourne*, Mr. Rosenbaum withdraws his motion for remand.

Reply Brief                                                                                         Page 2 of 20
*Rosenbaum v. Burgess, et. al.,* Case No. 3:06-00144-RRB

Rosenbaum on home duty, "[i]n May of 2004, after consultation with supervisors in the Office and attorneys in the Office of General Counsel at the Executive Office for U.S. Attorneys ("EOUSA"),"[2] Burgess, Skrocki and Smith had been plotting since April, 2004. That is what Mr. Skrocki wrote on April 30, 2004: "It is my understanding that office management is examining the possibility of workplace disciplinary action against AUSA Mark Rosenbaum." [3] Mr. Skrocki also stated in his June 1, 2004 memorandum that he learned of the "possibility of a pending personnel action by the United States Attorney with regard to AUSA Rosenbaum" "[i]n late April, 2004."[4] Mr. Skrocki stated that he learned about the proposed action in his capacity as District Office Security Manager ("DOSM") and as well, from various personnel in the office, in April, 2004.[5]

The Defendants have now disclosed that the EOUSA contact they relied upon on May 10, 2004, in the final development of the plan to intimidate Mr. Rosenbaum, is not an attorney. He is a security officer.[6] Mr. Barnes now claims he spoke with Mr. Skrocki on May 10, 2004 by telephone, and this resulted in Mr. Barnes' acknowledgement that "as a precaution, the plaintiff *could* be escorted from the building (and to his office to retrieve personal possessions) by FPS officers."[7] Mr. Barnes thus did not authorize the conduct that occurred, and his declaration does not support the statements of the

---

[2] Defendants' Memorandum of Points and Authorities in Support of Opposition to Plaintiff's Motion for Evidentiary Hearing; and in Support of Defendants' Motion to Amend Caption and Substitute United States as Defendant at p.3 (hereafter, "Defendants' Br. at __")
[3] Exhibit 17 to Plaintiff's Motion and Memorandum in Support of Evidentiary Hearing, Docket 45.
[4] Exhibit 18 to Plaintiff's Motion and Memorandum in Support of Evidentiary Hearing, Docket 45.
[5] Id.
[6] Declaration of Tommie Barnes, an exhibit to Defendants' Brief, at ¶2, p.2. The Court declined to compel the Defendants to produce the redacted portions of memos and emails between Mr. Barnes and Defendants, earlier, on the Defendants' assertions that such communications were privileged attorney-client communications. *See* Agreed Upon Motion to Resolve Discovery Dispute, Docket 35 and Order Upon Agreed Upon Motion to Resolve Discovery Dispute, Docket 39.
[7] (emphasis supplied) Id. at ¶ 5.

Defendants that Barnes authorized the conduct . Barnes states, in his declaration, that FPS officers *could* escort an employee who had a "potential for violent emotional outbursts."[8] But, in his 20 years at the U. S. Attorneys Office, Mr. Rosenbaum had been an outstanding trial lawyer, as is attested by the numerous awards he received.[9] The Defendants knew Mr. Rosenbaum; Burgess and Mr. Rosenbaum were friends for many years. Defendants have not brought forth a single fact that supports a "potential for violent outburst" on the part of Mr. Rosenbaum.

Moreover, the Barnes' declaration conveniently omits a crucial fact: prior to speaking with Mr. Skrocki on May 10, 2004, he sent Mr. Skrocki an email. Mr. Rosenbaum has never been able to review the email contents. However, it appears clear that it was not Skrocki who initiated the contact with Barnes, but rather, Barnes who sent Skrocki an email that said, "Lets discuss this when you get a minute."[10] That email demonstrates that Burgess, Smith and Skrocki are all inaccurate in asserting that Skrocki contacted Barnes at their direction.[11] Skrocki contacted Barnes because Barnes suggested it, and prior to Skrocki's telephone call to Barnes, he met with Burgess and Smith so that they could get their story straight about how they were going to present the Rosenbaum risk myth.[12]

---

[8] *Id.*

[9] Plaintiff's Amended Motion for Evidentiary Hearing, Docket 45, at Exhibits 1-11; and Employee Evaluations, *Id*. at Exhibits 12-16.

[10] *Id.* at Exhibit 20.

[11] Contrast Defendants' Brief at 3 ("After the decision was made, U.S. Attorney Burgess and First Assistant Smith directed DOSM Skrocki to consult with the Assistant Director for the Security Programs Staff at EOUSA, Tommie Barnes….." ).

[12] See Exhibit 20 to Amended Motion for Evidentiary Hearing, where Skrocki informs Burgess and Smith that Mr. Barnes would like him to call and states, "I would like to talk with you before I call Tommie. I will come down shortly. Steve."

The Defendants' declarations as to the agreed upon plan for May 12, 2004 are also at odds with the contemporaneous statements they made. In May 2004, Skrocki stated that Barnes instructed him to search Mr. Rosenbaum's office, that FPS personnel be contacted and stationed in the room when Mr. Rosenbaum was notified of the personnel action, that a box be provided so that Mr. Rosenbaum could take "a limited amount of personal effects," that the setting be one that allowed for easy security, that Mr. Rosenbaum turn over his credentials and pass cards, and that the Hirsch pad entry be deactivated.[13] Mr. Skrocki's May 10, 2004 telephone notes also reflect that the Barnes' instructions were that the detention would end at the door of the U.S. Attorney's Office, with security "standing by."[14] Indeed, there is no evidence that the detention of Mr. Rosenbaum was to extend beyond the door of the Office, except for Barnes' self-serving declaration, written by a government lawyer, more than two years after the event took place. Notably, Mr. Barnes' contemporary statement has not been produced. In his declaration, however, Barnes admits that the U.S. Attorney only has authority to keep people out of the U.S. Attorney's Office: "Neither employees nor the public have a right to enter a U.S. Attorney's Office beyond the reception area that is accessible to the public."[15]

Nonetheless, it is uncontroverted that Mr. Rosenbaum was detained, and was forced to accompany the FPS and Skrocki to his office, thence out of the U.S. Attorney's office, through the reception area, through a corridor to the elevator, into the elevator of

---

[13] Amended Motion for Evidentiary Hearing at Exhibit 18, Bates stamped USAO001525
[14] *Id.* at Exhibit. 19, Bates stamped USAO001541.
[15] Declaration of Tommie Barnes at ¶ 3.

the Anchorage Federal Building, down to the parking garage, across the garage to his truck, and into the truck.[16]

### III. RESTATEMENT OF PROCEDURAL FACTS

Mr. Rosenbaum also takes issue with the Defendants' statement of the procedural facts of this case. First, the Defendants mischaracterize Mr. Rosenbaum's allegations of harm. It is untrue that Mr. Rosenbaum alleges only that "he was unlawfully imprisoned by the Defendants at the U.S. Attorney's Office in Anchorage," as Defendants assert.[17] In fact, Plaintiff alleges that:

1. He was ordered to accompany the Defendants, and he did so, because he knew and feared that they were armed (complaint at ¶ 6);

2. He was detained at his office, when he was ordered not to leave (complaint at ¶ 7);

3. The Defendants continued to confine Mr. Rosenbaum, including in the elevator (which is not in the U.S. Attorney's Office), to the garage, and to his vehicle (which was not in the U.S. Attorney's Office) (complaint at ¶ 8);

4. The defendants confinement included in the hallway outside of the Office, in the hallway outside of the Office to the elevator; in the elevator, and in the parking garage (complaint at ¶ 12).

The only basis for the misleading characterization of the complaint and the precedent facts is, of course, because the Defendants' position is untenable.

---

[16] *See also* Complaint, Docket 6 at Attachment 3, ¶ 8, alleging detention out of U.S. Attorney's Office).
[17] Defendants' Brief at 5.

The defense asserts that "Discovery has now been concluded."[18] Here, Defendants are partially correct; the limited discovery the Court permitted is apparently complete. However, as demonstrated by the Defendants' revision of the facts so that their declarations are at odds with their contemporaneous statements, the limits placed on the discovery appears to have resulted in a situation where the facts discovered are at odds with the facts as the Defendants now wish them to be.

## IV.  ARGUMENT AND AUTHORITY

A.  Summary of Argument.

Federal law requires this Court to apply Alaska's law of *respondeat superior* to determine whether the Defendants acted in the scope of their federal employment. The Defendants' detention of Mr. Rosenbaum, in the absence of any authority to do so, was outside the scope of their employment under Alaska law. They had no authority, either express or implied, to detain Mr. Rosenbaum, to frog-step him through the corridors of the Federal Building, after he left the U.S. Attorney's Office. Defendants' revision of the events leading up to the execution of a plan hatched months before is further proof that, on May 12, 2004, they exceeded the scope of their employment. Defendants are subject to liability as individuals and without the immunity provided under the Federal Torts Claims Act to Federal employees who act within the scope of their employment.

B.  Standard of Review.

This case was removed from state court and the United States has filed a certification that the Defendants were federal employees acting within the scope of their

---

[18] Defendants' Brief at 7.

employment or office.[19]  Plaintiff , therefore, agrees with the defense  that this case is controlled by the Westfall Act, 28 U.S.C. § 2679(d).[20]

However, the scope-of-employment certification is subject to judicial review.[21] That review is to be *de novo*.[22] The court is to apply the *respondeat superior* principles of the state where the tort occurred, in this case, Alaska.[23]

Under Alaska law, the question is a jury issue, and the motivation of the employee is a key issue.[24]  Because the Court limited discovery to whether the Defendants possessed the authority claimed, and not whether the Defendants were motivated in the exercise of the authority by a purpose to serve the employer, the motivation element remains a genuine issue of material fact.  Because none of the Defendants was employed to perform evictions in the manner that this was carried out, without any rational basis, the kind of conduct undertaken is outside the scope of employment of these Defendants.

---

[19] *See* Notice of Removal and Exhibit B thereto.

[20] 28 U.S.C. § 2679(d)(2) provides:
"Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court for the United States for the district and division embracing the place in which the action or proceeding is pending such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification shall conclusively establish scope of office or employment for purposes of removal."

[21] *Guitierrez de Martinez v. Lamagno,* 515 U.S. 417, 420, 115 S.Ct. 2229, 2237 (1995).

[22] *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993);  *Meridian Int'l Logistics, Inc. v. U.S.*, 939 F.2d 740, 745 (9th Cir. 1991).

[23] *See  Haddon v. U.S.*, 68 F. 3d 1420, 1422 (D.C. Cir. 1995), *reh. denied*; *Green v. Hall,* 8 F.3d  695, 698-99 (9th Cir. 1993).

[24] *See Ondrusek v. Murphy,* 120 P.3d 1053, 1058 (Alaska 2005).

C.   Defendants Were Acting Outside the Scope of Employment.

The defense asserts that "Alaska views scope of employment liberally."[25] This is a misstatement of the law. The case that the defense relies upon is a criminal case that had nothing to do with the law of *respondeat superior*. The Defendants cite no Alaska case with a holding that Alaska courts view the scope of employment liberally.

In fact, Alaska courts require a case-by-case analysis.[26] The factors stated in the Restatement (Second) Agency § 228 are considered as relevant considerations, but are not prerequisites, in order to support a jury verdict.[27] There is nothing inherently liberal in the application of Alaska's *respondeat superior* jurisprudence.

The defense asserts that "[t]here is no dispute that the actions taken by …Burgess and … Smith were related to personnel decisions concerning the terms and conditions of the defendant's employment."[28] In fact, there is a dispute. The actions taken by Burgess and Smith on May 12, 2004 were not of "the kind that [[s]he] were employed to perform," a key factor under the Restatement (Second) of Torts, § 228. To the contrary, the conduct here were based upon false pretenses, innuendo, and the myth of violent emotional outburst. Not even the Defendants justify the conduct in detaining Mr. Rosenbaum from the moment he was ejected from the Office as employee discipline. Rather, they concede that the authority is limited:

> U.S. Attorneys have the ability to restrict access to the Office beyond the reception area, including access by employees. U.S. Attorneys and their

---

[25] Defendants' Brief at 8, *citing U.S. v. Cheely,* 814 F. Supp. 1430, 1443, n. 14 (D. Alaska 1992).
[26] *Ondrusek v. Murphy,* 120 P.3d 1057.
[27] *Laidlaw Transit, Inc. v. Crouse ex rel Crouse*, 53 P.3d 1093, 1098-99 (Alaska 2002).
[28] Defendants' Brief at 9.

delegates, including District Office Security Managers and First Assistants, can request FPS officers to escort individuals out of the Office…. [29]

Thus, even assuming that Burgess, Smith and Skrocki had some purpose to serve the employer under the peculiar facts of this case, they lacked authority to continue to detain Mr. Rosenbaum after they had evicted him from the Office.

Nor do the Alaska Defendants argue that the force used was "expectable," another factor to consider under a *respondeat superior* analysis.[30]  Rather, at this late date, the Defendants have revised the history of the ordeal, so that, even though Skrocki never reported the instruction, Barnes now declares that he told Skrocki that, "as a precaution, the Plaintiff could be escorted from the building."[31]  But that late declared statement, with no other support, cannot, *ipse dixit,* cloak an otherwise tortious act with immunity.

The Defendants also justify their actions by asserting that they were "acting under the guidance of, and with the specific approval from, Tommie Barnes…."[32]  But that cannot be so, where the recorded telephone calls and memoranda simply had no such guidance for the conduct alleged in Plaintiff's complaint at ¶ 8-9.  The conclusion is that the Defendants were off on their own frolic, and frolic is not conduct for which the employer is liable in *respondeat superior* under Alaska law.

The defense argues that, because the conduct in this case occurred late in the afternoon, but after the close of business, and in the Federal Building, that the

---

[29] Defendants' Brief at 9, quoting Barnes' Declaration.
[30] *See* Restatement (Second) of Agency, § 228 (1)(d).
[31] Barnes' Declaration at ¶ 5.
[32] Defendants' Brief at 9

Restatement's time and space limits are met.[33] The Defendants' reliance is misplaced. The sole case the defense cites is *Doe v. Samaritan Counseling Center*.[34] *Doe* was not a final decision determining *respondeat superior* liability. To the contrary, the Supreme Court held that the <u>plaintiff</u> in that case was not entitled to summary judgment on her claim that the time and space limitations were sufficient to establish respondeat superior on summary judgment:[35]

> Inherent in our disposition of this petition is our further conclusion that Doe is not entitled to summary judgment on her *respondeat superior* claim given the existence of genuine issues of material fact relevant to this claim.

The Defendants' suggestion that *Doe* is dispositive is simply erroneous.

The Defendants assert that *Laidlaw Transit, Inc. v. Crouse*[36] is helpful in order to determine the third element of the Restatement's analysis. That element requires that the tortious conduct be motivated, at least in part, by a purpose to serve the master.[37] Here, the Defendants have two problems. First, the Defendants are forced to concede that Mr. Rosenbaum is correct that Alaska courts examine motive.[38]

The second problem is that *Laidlaw* is simply not on point. In that case, the defendant bus company was found liable for its employee's conduct in driving a bus while impaired by marijuana. The Supreme Court affirmed the verdict, finding that the driver was doing what she had been hired to do—driving a school bus. Her act of smoking marijuana was not at issue. Here, the Defendants' conduct in evicting Mr.

---

[33] Defendants' Brief at 10, *citing* Restatement (Second) of Agency, §228 (1)(b).
[34] *Doe v. Samaritan Counseling Center,* 791 P.2d 344 (Alaska, 1990).
[35] *Id.,* 791 P.2d at 350.
[36] *Laidlaw Transit, Inc. v. Crouse,* 53 P.2d 1093, 1099 (Alaska 2002).
[37] Restatement (Second) Agency, §228 (1)(c).
[38] *See* Defendants' Brief at 10 ("[M]otivation to serve the employer is a relevant element to establish scope…")

Rosenbaum from the Office is not at issue. That is a matter that is preserved under an Federal Tort Compensation Act filing. What is at issue is Defendants' conduct in the continuing detention of Mr. Rosenbaum after they had exiled him from the Office. Thus, unlike the defendant employees in *Doe* and *Laidlaw,* here the Defendants were not within time and space limitations in their continued detention of Mr. Rosenbaum. To the contrary, their conduct is analogous to that of the guide in *Ondrusek,* who, although authorized to ride horses after hours, nonetheless did so for personal benefit, and not for the benefit of his employer.[39]

The Defendants' premise, that the Court should imply, as a matter of law, a "motivation to serve," on the basis of the time and space limits factor, is also misplaced. In *Doe,* the Court rejected a similar argument advanced by the plaintiff in that case. The Court held that genuine issues of material fact prevented it from finding, as a matter of law, that the Plaintiff was entitled to judgment on the question of *respondeat superior*. In *Laidlaw,* the impaired employee was driving the bus at the time of the accident. Here, there continues to be a genuine issue of material fact whether the continued detention was within the time and space limitations that the Defendants had earlier memorialized in memos, emails and telephone notes.[40]

---

[39] *See Ondrusek*, 120 P.3d 1057.
[40] The Defendants misunderstand Plaintiff's argument regarding intentional torts. Plaintiff does not argue that, because the conduct constitutes an intentional tort, that is alone sufficient to take the matter out of the scope of employment. Rather, Mr. Rosenbaum asserts that the Defendants' intentional conduct exceeds the scope of authority takes the matter out of *respondeat superior* liability.

D.  Motivation is Directly Relevant.

The Defendants, having conceded that motivation is relevant (Defendants' Brief at 10), contradict themselves two pages later (Defendants' Brief at 12), and argue that motivation is irrelevant. The Defendants assert that "personal animus should not alter the scope of employment analysis."[41] Mr. Rosenbaum contends that the conduct giving rise to the complaint, the continued detention outside of the Office, was motivated by personal animus, without being actuated, at all, by a desire to serve the U.S.

The cases cited by the Defendants in support of their misconstruction of Plaintiff's argument are thus inapt to an analysis of the issues in this case. In *Maron v. United States,* [42] a physician brought tort claims against fellow employees, when his co-employees treated him badly at work. The conduct there occurred during the workday, in the office. Moreover, the court did consider "ill will," holding that it would not "look at ill will alone, but must look at the alleged acts and the doctors' duties at the NIH in making the decision about whether they were acting within the scope of employment."[43] (emphasis supplied.)

In *Martinek v. United States,*[44] an Air Force radiologist was disciplined at work, at the job site, and the disciplinary actions were overturned by a review board. The case is distinguishable; the conduct was within the scope of employment. Unlike Rosenbaum, the supervisor in *Martinek* worked within the system. Thus, the Review Board considering the matter held that a negative performance report be declared void, and that

---

[41] Defendants brief at 12.
[42] *Maron v. United States*, 126 F. 3d 317 (4th Cir. 1997).
[43] *Id.*, 126 F.3d 325.
[44] *Martinek v. United States*, 254 F. Supp. 2d 777(S.D. Ohio 2003), cited at p.13, Defendants' Brief

the blemishes on the physician's record be removed.[45]  In contrast, here, Mr. Rosenbaum was subjected to detention after hours, out of the office.[46]

The defense also simply ignored the cases, both state and federal, that Plaintiff has brought to the Court's attention.[47]  The Defendants' Brief does not even mention *Haddon v. United States.*[48]  There, where the conduct was assault, the court did examine motive in determining that an electrician was not acting within the scope of his employment when he assaulted an assistant chef who had filed an equal employment opportunity complaint against the White House Chief Usher.  The Defendants ignored *Nadler v. Mann,*[49] where an Assistant United States Attorney leaked defamatory material against his opponent in a judicial election, the court held that the conduct was outside the scope of an AUSA's employment. There, the court noted that it was significant that the AUSA was an opponent in a contested judicial election.[50]  The government ignored this case law.

The government also ignored plaintiff's discussion of *Allstate Ins. Co. v. Quick*[51]. There, the federal employee filed an EEO complaint against her supervisor, who sued for defamation and intentional infliction of emotional distress arising out of false statements contained in the report. The court held, applying Ohio law, that, where the employee did not use the grievance procedure for its intended purpose, but rather, to make false

---

[45] *Id.* at 780.
[46] *Contrast Martinek*, 254 F. Supp .2d at 787 ("all of the relevant conduct occurred ... during work hours").
[47] Plaintiff's Amended Motion, Doc. 45 at pp. 26-29.
[48] 68 F.3d 1420 (D.C. Cir. 1996).
[49] 951 F.3d 301 (11th Cir. 1995).
[50] *Id.* at 306.
[51] 254 F. Supp. 2d 706 (S.D. Ohio, 2002). Please note: Plaintiff's opening brief mis-cited this case as " *Quick v. United States*, 254 F.2d 708." Counsel apologizes for this mistake.

statements, such was outside the scope of employment. Here, Mr. Rosenbaum has established that the detention after he was led out of the Office was based on false statements. The conduct, as in *Quick*, was outside the scope of employment, because of the motive of the defendant. Moreover, as in *Quick*, the process giving rise to the wrongful conduct was not used for its intended purpose, and thus, the United States cannot substitute itself for the defendants.

The Defendants also ignored Plaintiff's discussion of the Texas case, *Counts v. Guevara*.[52] In *Counts*, where the defendant defamed two coworkers at his retirement party, the Fifth Circuit held that, even if attendance at a retirement party was within the scope of employment, the conduct -- defaming his employees, was not in furtherance of the employer's business and not for the accomplishment of an object of the employment.[53] The court thus rejected an analysis limited to time and space limits, and required the district court to consider motive.

These cases run counter to the Defendants' argument, and therefore Defendants ignored them. Similarly, Defendants ignored state court cases from the relevant jurisdiction, Alaska, cited by Plaintiff. Those cases also focus on motive. In the *Ondrasek* case, the conduct causing the harm was one for which the guide was employed and that the conduct occurred substantially within time and space limits. Nonetheless, the court found that the guide was not acting within the scope of his employment when he was not actuated by a purpose to serve the employer, but rather, to take his mother on a

---

[52] 328 F.3d 212 (5th Cir. 2003).
[53] *Id*. at 214.

horseback ride.[54] The defense also sidestepped *J&S Services*, where an employee for the Alaska Department of Transportation steered a contract to his friend in the employee's capacity as a procurement officer.[55] There, the Court held that "deliberate and bad faith misconduct falls outside the scope of employment."[56]

The defense argues that violations of federal civil service laws do not create personal liability for the Defendants. (Defendants Brief at 14.) That, of course, was not the point of Plaintiff's argument, which is headed, "U.S. Attorney Authority over Assistant U.S. Attorneys is subject to Limitations."[57] This argument addressed previous pleadings where the Defendants had asserted that the U.S. Attorney has plenary authority over AUSA's.[58] The government cited no case law, and made no argument refuting Plaintiff's argument that the U.S. Attorney's authority regarding personnel decisions is limited, and not as expansive as the representations made earlier by the Defendants. It is also Plaintiff's position that acts in excess of authority, including acts specifically prohibited by law, are not in the scope of employment.[59]

E.   Genuine Issues of Material Fact Remain

The Defendants oppose an evidentiary hearing, arguing that there are no genuine issues of material fact for the court to determine. The Defendants are demonstrably in error. In the multiple pages of materials they have filed, they have not denied, by

---

[54] *Ondrusek*, 120 P.2d 1055.
[55] *J&S Services v. Tomter,* 139 P.3d 544, 548 (2006)
[56] *Id.*
[57] Amended Motion for Evidentiary Hearing at 16-18.
[58] *See, e.g.*, Opposition to Plaintiff's Motion for Limited Discovery, Doc. 25 at p. 8 and n. 5.
[59] *Accord, J& S Services, supra.*

declaration or by written responses to interrogatories, that there was no reason to continue to detain Mr. Rosenbaum.

Mr. Rosenbaum has established that, prior to 2002, he simply never had a poor evaluation, and had not suffered any disciplinary actions at all. He has established his meritorious record as a trial lawyer in the service of the United States over a distinguished 20 year career. He has established that the continued detention of an AUSA, as occurred in this case, had no precedence in the Anchorage office at least since 1992, when Mr. Skrocki became the DOSM. The Defendants have produced memoranda, telephone notes and emails that establish that the planning and execution of the disciplinary action was over the course of months. Yet, there is no record, and no mention, of the right to a continuing detention. Nor is there a rational basis for the detention.

The Defendants have told several different versions of the events leading up to May 12, 2004. They have represented that Mr. Skrocki was making the recommendations, based upon office scuttlebutt that Mr. Rosenbaum was going to be disciplined. The Skrocki recommendations, contained in his April 30, 2004 memo, contain nothing regarding continued detention after Mr. Rosenbaum was to be placed on home office status. The Burgess' declaration claims that Burgess directed Skrocki to contact Tommie Barnes to get direction. The declaration is inconsistent with the existing record. It is self-serving. And it fails to establish that the declarant was motivated, even in part, by purpose to serve the United States.

The district court is required to resolve factual disputes as to whether defendants were acting in the scope of their employment.[60] The Ninth Circuit explains the importance of the procedure as follows:

> We hold that when a district court is reviewing a certification question under the Westfall Act, it must identify and resolve the disputed issues of fact necessary to its decision before entering its order. In doing so, it should hold such hearings as are appropriate ( including evidentiary hearings if necessary), and make the findings necessary to bind the parties… and enable them to appeal the certification decision….[61]

Thus, in *Meridian International Logistics v. United States*,[62] the Ninth Circuit, reversing the district court, directed it to conduct an evidentiary hearing. In that case, the direction consisted of considering documentary evidence, where the issue was whether more extensive discovery would compromise a criminal investigation. However, the court was careful to note that this limitation applied to the unique facts of that case.[63]

Under the facts of this case, an evidentiary hearing is required in order to resolve the disputed genuine issue of fact regarding the extent of the authority of the U.S. Attorney and his assistants with respect to involuntary detention of an AUSA, particularly after the AUSA is outside the Office. Moreover, given the force used and the limitations of express authority previously cited, a genuine issue of material fact that must be resolved is one of motive: Did Burgess, Smith and Skrocki intend to intimidate Mr. Rosenbaum after he was effectively removed from the Office environs for personal reasons? Under the circumstances of this case, the personal animus of the defendants has

---

[60] *Arthur v. United States*, 45 F. 3d 292, 296 (9th Cir. 1995).
[61] *Id.*
[62] 939 F.2d 740 (9th Cir. 1991).
[63] *Id.* at 745.

everything to do with the conduct and the court's ability to determine scope of employment.

## V. WITHDRAWAL OF MOTION FOR REMAND

Based upon the decision of the United States Supreme Court on Jan 22, 2007, *Osbourne v. Haley*, Mr. Rosenbaum withdraws his motion for remand.

## VI. OPPOSITION TO MOTION FOR SUBSTITUTION

Because Mr. Rosenbaum has carried his burden and has established that the defendants' detention of Mr. Rosenbaum was unlawful, and not in the scope of their employment, the Court should deny the motion to substitute the United States.[64]

## VII. CONCLUSION

Mr. Rosenbaum was detained unlawfully, based on false statements. Genuine issues of material fact remain that prevent the court from determining, on the limited discovery that Plaintiff has been accorded, that the scope certification in this case is true. Alternatively, based on the discovery and the submittals to this court, the scope certification is not true, and should be reversed. The facts before the court establish that the detention of Mr. Rosenbaum was not motivated by a purpose, even in part, to serve the United States. Rather, it was actuated by the Defendants' disregard for Mr. Rosenbaum's liberty interests after he left the Office.

---

[64] *See Arthur v. United States,* 45 F.3d 296.

RESPECTFULLY SUBMITTED this 26th day of January 2007, at Anchorage, Alaska.

        SAMUEL J. FORTIER
        Attorney for Plaintiff

        / s /Samuel J. Fortier
        FORTIER & MIKKO, P.C.
        101 West Benson Blvd., Suite 304
        Anchorage, AK 99503
        Telephone No: (907) 277-4222
        Facsimile: (907) 277-4221
        E-mail: sfortier@fortmikk.alaska.com
        AK Bar No. 8211115

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2007, a true and accurate copy of the foregoing was served electronically on:

Rebecca S. Cohen
Special Assistant Attorney General
District of Alaska
700 Stewart Street, Suite 5220
Seattle, WA  98101

/ s / Samuel J. Fortier