UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK A. ROSENBAUM,<br><br>        Plaintiff,<br><br>        v.<br><br>TIMOTHY A. BURGESS, DEBORAH M.<br>SMITH, STEVE SKROCKI, TIM<br>BLEICHER, and JOHN DOE I,<br><br>        Defendants. | Case No. 3:06-00144-RJB<br><br>ORDER ON<br>DEFENDANTS' MOTION<br>TO AMEND CAPTION<br><br>ORDER ON PLAINTIFF'S<br>AMENDED MOTION<br>FOR EVIDENTIARY<br>HEARING |

This matter comes before the court on Defendants' Motion to Amend Caption (Dkt. 4) and Plaintiff's Amended Motion for Evidentiary Hearing (Dkt. 45-1). The court has considered the pleadings filed in support of and in opposition to the motions, the oral argument of counsel, and the file herein.

PROCEDURAL AND FACTUAL HISTORY

Many of the facts underlying this civil action for unlawful imprisonment are in dispute. For the purposes of these motions, the court assumes the truth of Plaintiff's version of the facts, which are outlined below, and Defendant's submissions insofar as they are not contested. The issue presented to the court does not concern the merits of the underlying civil claim , which is limited to a claim for false imprisonment, and only concerns whether the actions allegedly taken taken by Defendants were within their scope of employment.

On May 12, 2004, Plaintiff was summoned to the U.S. Attorney's conference room to meet with Defendants Timothy Burgess and Deborah Smith. Dkt. 48 at 5. At the time Defendant Burgess was the

United States Attorney for the District of Alaska while Defendant Smith served as his First Assistant. Defendant Steve Skrocki, the District Office Security Manager, arrived shortly thereafter accompanied by two armed FPS officers, Tim Bleicher and "John Doe". *Id.* Defendant Burgess informed Plaintiff that he would be placed on home duty for an indefinite period of time because he was a disruption to the functioning of the office. Dkt. 45-4, Exh. 20 at 27. Plaintiff felt he was not free to leave at this time and was asked to accompany Defendant Timothy Bleicher, a supervisor for the Federal Protective Service ("FPS"), as well as Defendant Skrocki and John Doe, an unnamed individual employed by the FPS. Dkt. 48 at 6. Together they proceeded to Plaintiff's office, where he was allowed to pack up his belongings. *Id.* Plaintiff was escorted from the U.S. Attorney's Office by way of the Federal Building elevator, and proceeded to Plaintiff's car in the Federal Building garage where Plaintiff was asked to get into his vehicle and leave. *Id.*

As a United States Attorney at the time, Defendant Burgess's authority over the operations fo the U.S. Attorney's office was broad. His managerial capacity included the "ability to restrict access to the Office beyond the reception area, including access by employees." Dkt. 52 at 3. Further, "U.S. Attorneys and their delegees, including District Office Security Manager and First Assistants, can request Federal Protective Services ('FPS') officers to escort individuals out of the Office, including employees who are subject to discipline or termination." *Id.* Defendant Smith, as First Assistant, and Defendant Skrocki, as District Office Security Manager, were also allowed to escort individuals out of the Office, including employees who are subject to discipline. *Id.*

As FPS officers, Defendants Bleicher and Doe provided security and law enforcement services to tenant agencies in the Anchorage federal building. Dkt 54 at 2. Their job duties and responsibilities included "proving [*sic*] escort services for tenant agencies, at the request of the tenant agency." *Id.* Escort services are sometimes requested by a tenant agency when the agency decides to discipline an employee. *Id.*

On May 11, 2006, Plaintiff filed a civil action in Superior Court for the State of Alaska, Third Judicial District at Anchorage. Dkt. 12. On June 13, 2006, the United States filed a Notice of Removal. Included in the notice as Exhibit B was a certification by Phyllis J. Pyles, director of the torts branch of the United States Department of Justice, that Defendants were acting within the scope of their respective

employment as employees of the United States at the time of the conduct alleged. Dkt. 1-3. Such certifications are known as "Westfall Certification."

The Notice of Removal stated that the case was removed pursuant to the Westfall Act, which provides that, upon certification by the Attorney General that a defendant employee was acting within the scope of his federal employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a state court shall be removed at any time before trial to the district court of the United States for the district in which the action is pending. Dkt. 1-1, at 1-2.

Concurrent with the Notice of Removal, the United States filed a Notice of Substitution, under 28 U.S.C. § 2679(d)(2), and moved to amend the caption of the case to substitute and name the United States as a party defendant in place of the individual defendants. Dkt. 4-1. Plaintiff opposed the motion to amend the caption and substitute and name the United States as a proper defendant, and requested that the court remand the case to state court. Dkt. 13. Prior to ruling on the Defendants' motion, however, plaintiff requested a continuance (Dkt. 14) to permit him to challenge the Westfall Certification by engaging in limited discovery (Dkt. 12) and by presenting evidence at an evidentiary hearing (Dkt. 13).

On September 18, 2006, before ruling on the other pending motions, this court allowed limited discovery on issues regarding the authority of Defendants to engage in the conduct alleged in ¶¶ 4-9 of the complaint. Dkt. 29 at 6. This court did not permit discovery into issues relating to Defendants' alleged animus toward plaintiff. *Id.*

On January 5, 2006, following limited discovery, Plaintiff filed an amended motion for evidentiary hearing. Dkt. 45-1. Defendant responded (Dkt. 51) and Plaintiff filed a reply (Dtk. 60) and an amended reply (Dkt. 63). On February 2, 2007, the court issued a minute order based on the parties' agreement that remand to state court is precluded under the United States Supreme Court decision in *Osbourne v. Haley*, 2007 WL 135830 (Jan. 22, 2007). Dkt. 61. The following two motions are now pending.

## MOTION TO AMEND CAPTION (Dkt. 4-1)

Defendants argue that, pursuant to 28 U.S.C. § 1442 and 28 U.S.C. § 2679(d)(2) (commonly referred to as the Westfall Act), following certification by the Attorney General that the defendant employee was acting within the scope of his federal employment at the time of the incident, the United States is to be substituted as the party defendant in place of the individually named defendants.

Plaintiff argues that he has carried his burden of establishing that the Defendants' alleged detention of Plaintiff was not within the scope of Defendants' employment and that Plaintiff contends that substitution would be improper under the Westfall Act.

<u>AMENDED MOTION FOR EVIDENTIARY HEARING</u> (Dkt. 45-1)

Plaintiff contends that a evidentiary hearing is necessary to determine whether or not the Government's certification was in error.

Defendants argue that an evidentiary hearing is only necessary if this court concludes that there is a genuine issue of material fact relating to the scope of employment issue. Defendants assert that the only possible issue of fact remaining concerns the motivation behind defendants' actions. Because such motivation was incidental to the Defendants' job duties, defendants contend the conduct at issue is within the scope of employment and that no material issue of fact remains.

<u>LEGAL STANDARD</u>

Under the Westfall Act, upon certification by the Attorney General that the defendant federal employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court is deemed an action against the United States and the United States is to be substituted as the party defendant. 28 U.S.C. § 2679(d)(1).

Certification by United States Attorney General that federal employees were acting within scope of their employment is conclusive for purposes of removal under the Westfall Act, but does not restrict federal courts from inquiring into the issue of scope of employment. 28 U.S.C. § 2679(d)(2); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995). The Attorney General's certification that a federal employee acted within the scope of employment is reviewable in court for the purposes of substitution. *Gutierrez de Martinez*, 515 U.S. at 434. If the court determines that the federal employee acted within his or her scope of employment, amending the caption and substituting the United States as defendant is proper. 28 U.S.C. § 2679(b)(2).

For purposes of the WestfallAct the court reviews *de novo* whether a government employee was acting within their scope of his employment. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). Scope of employment determinations are made according to the principles of *respondeat superior* of the state in

which the alleged tort occurred. *Id*. at 698-99. Because the incident at issue occurred in Alaska, the substantive law of Alaska applies here. The party seeking review bears the burden of presenting a preponderance of evidence contrary to Attorney Generals' certification. *Id.* at 698.

When faced with a challenge to a scope of employment certification, a district court in this circuit is authorized but not required to conduct an evidentiary hearing to resolve disputed factual questions. *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 874 (9th Cir. 1992) (citing *Meridian Int'l Logistics*, 939 F.2d at 745). For instance, in *McLachlan v. Bell*, 261 F.3d 908, 910-11 (9th Cir. 2001), an evidentiary hearing was properly denied when the evidence, in the light viewed most favorable to the plaintiff, supported a dismissal.

## DISCUSSION

Under Alaska law, employers are ordinarily held vicariously liable for acts performed by their employees within their scope of employment. *Domke v. Alyeska Pipeline Service Co., Inc.*, 137 P.3d 295, 300 (Alaska 2006). In determining whether an employee has acted within his scope of employment, Alaska courts apply a flexible multi-factored test. *Id.* The test adopts the factors set forth in the Restatement (Second) Of Agency:

> (1) conduct of a servant is within the scope of employment if, but only if:
>   (a) it is of the kind he is employed to perform;
>   (b) it occurs substantially within the authorized time and space limits;
>   (c) it is actuated, at least in part, by a purpose to serve the master, and
>   (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Id.*; Restatement (Second) Of Agency, § 228 (1958). *See also* Restatement (Second) Of Agency, §§ 229-236 (1958). However, the factors are not prerequisites and have only been adopted as relevant considerations to be used when determining the scope of liability. *Doe v. Samaritan Counseling Center*, 791 P.2d 344, 346 (Alaska 1990)*; Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 764 n.14 (Alaska 1973) (rejecting the argument that factors are a prerequisite) .

### 1. Type of Action Performed

The first factor looked to in analyzing the scope of employment is whether the activity performed is of the kind the employee is employed to perform. Restatement (Second) Of Agency, § 228 (1958).

Plaintiff contends that falsely imprisoning an individual whom one has a vendetta against does not fall within Defendants' scope of employment. Defendants contend that they were performing an assigned task and that the motivation behind performing this task is irrelevant to its determination.

The Alaskan Supreme Court addressed this issue in *Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093 (Alaska 2002). The suit was brought against a transportation company in the wake of an accident. The employee bus driver responsible for the accident was found to have been under the influence of marijuana at the time of the accident. The defendant in *Laidlaw* sought to avoid liability by arguing that the actions taken by the driver were outside her scope of authority because a company policy explicitly prohibited smoking marijuana.

The court disagreed and held that, as a matter of law, the driver's conduct occurred within the scope of her employment. *Id.* at 1099. The court concluded that the driver had been specifically employed to drive a school bus; the fact that she performed that activity while under the effects of marijuana did not mean she acted outside the scope of her employment. *Id.* It merely demonstrated the recklessness with which she performed her assigned task. *Id.* Further, the court noted that "[a] wrongful act committed by an employee while acting in his employer's business does not take the employee out of the scope of employment, even if the employer has expressly forbidden the act." *Id.*

*Laidlaw* represents the principle that motivation is not a relevant consideration in the determination of this factor. When analyzing this factor, the court focuses on the act being performed, not the motivation behind that act. Here, the defendants' motivations, while perhaps relevant to the third factor of the scope of employment analysis, are not relevant in determining if the activity performed is of the kind the employee is employed to perform. As explained below, each defendants was performing an activity of the kind he or she was employed to perform.

*Timothy Burgess*

Plaintiff alleges that Defendant Burgess was actively involved in the planning that involved assigning Plaintiff to home duty. Plaintiff further alleges that, in the process of planning, Defendant Burgess took measures to ensure that Plaintiff was falsely imprisoned as he was escorted from the federal building. As a United States Attorney, it was within Defendant Burgess's scope of employment to restrict access to the Office beyond the reception area, including access by employees. Dkt. 52 at 3. Furthermore,

U.S. Attorneys and their delegees, including District Office Security Managers and First Assistants, can request FPS officers to escort individuals out of the office. *Id.* Defendant Burgess is accused of planning to have Plaintiff escorted from the U.S. Attorney's office. The fact that he may have performed such an action recklessly, or with a vendetta, is immaterial; his action was of the kind he was employed to perform.

*Deborah Smith*

Plaintiff alleges that Defendant Smith was involved in the planning that involved assigning Plaintiff to home duty. Defendant Smith, as a delegee of the U.S. Attorney and First Assistant, also had authority to request FPS officers to escort individuals out of the office. Dkt. 52 at 3. Therefore, her actions were also of the kind she was employed to perform.

*Steve Skrocki*

Plaintiff alleges that Defendant Skrocki was involved in the planning that involved assigning Plaintiff to home duty. Plaintiff further alleges that Defendant Skrocki exceeded his scope of authority when he followed through on the instructions given to him to direct FPS Officers to escort the plaintiff. Defendant Skrocki, as a delegee of the U.S. Attorney and District Office Security Manager, had authority to request FPS officers to escort individuals out of the office. Dkt. 52 at 3. Therefore, his actions were also of the kind he was employed to perform.

*Timothy Bleicher and John Doe*

The job duties and responsibilities of defendants Bleicher and Doe, as FPS officers, include providing "escort services for tenant agencies, at the request of the tenant agency." Dkt. 54 at 2. At issue in this case is the manner in which the officers escorted Plaintiff through the Federal Building on May 12, 2006. Because the officers were employed to provide escort services, the actions at issue were therefore of the kind defendants Bleicher and Doe were employed to perform.

**2. Authorized Time And Space Limits**

For conduct to be considered within the employee's scope of employment it must be "substantially within the authorized time and space limits." Restatement (Second) Of Agency, § 228(1)(b) (1958). In Alaska, the presence of the word "substantially" has lead to a broad interpretation of this factor. In *Doe v. Samaritan Counseling Center*, a patient alleged that she went to the therapist for counseling and, during two of her sessions, she was kissed and fondled by the counselor. After the patient cancelled her sessions,

the two allegedly met and had sexual intercourse. The sexual intercourse served as the foundation for the suit and took place away from the employer's premises roughly one month after counseling ended. The court, in reversing a summary judgment in favor of the employer, also noted that summary judgment in favor of the employee would be improper. *Samaritan Counseling Center*, 791 P.2d at 349. The court held that a material issue of fact remained concerning this factor and that a trier of fact might reasonably conclude that the actions took place outside the employer's authorized time and space limits. *Id*.

Here, Plaintiff states that, for two reasons, the actions were not within the authorized time and space limits. First, Plaintiff argues that some of the actions took place outside of the U.S. Attorney's office, but inside the Federal Building, and therefore exceeded the spacial limits of authority. Second, Plaintiff argues that since the actions at issue took place after working hours, when the U.S. Attorney's office was closed to the public, the actions exceed the authorized time limits.

The authority to make personnel decisions does not appear to have any spacial limit. However, even if the authority to make such a decision was confined to the U.S. Attorney's office, it would not be violated in this case by defendants Burgess, Smith, or Skrocki because the decision to have Plaintiff escorted from the building actually took place within the U.S. Attorney's office. Plaintiff even notes that there is no evidence that there were plans to extend his detention beyond the door of the U.S. Attorney's Office. Dkt. 63 at 5. Further, even if instructions were given to the FPS officers to escort Plaintiff to the Federal Building parking garage, it would remain a reasonable exercise of their authority as U.S. Attorney and assistants. The only action that took place outside the U.S. Attorney's office was when Plaintiff was escorted to his car by FPS officers. FPS officers had authority to provide escort services within the Federal Building. The parking garage can certainly be considered part of the federal building. Because they did not leave the Federal Building, the FPS officers did not exceed the spacial limits of their authority.

The time limits on authority were also not exceeded. Although the U.S. Attorney's offices were no longer open to the public at the time the events took place, it does not follow that Defendants exceeded their authority in this respect. Plaintiff has produced no evidence showing that the decision-making authority given to defendants Burgess and Smith ceased exactly at five o'clock each evening or that the other defendants had no authority to perform their assigned tasks after five o'clock. Just because the doors of the U.S. Attorney's Office were closed to the public does not mean that each Defendant no longer had

authority to do his or her job. Since conduct occurred substantially within the authorized time and space limits , the second factor has also been met by defendants.

### 3. "Motivation to Serve" Test

The third relevant factor to be considered in determining the scope of employment is whether the action was performed, at least in part, with a purpose to serve the master. This factor, also known as the "motivation to serve" test, was initially discussed in detail by *Samaritan Counseling Center*, where the court held that when "tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been satisfied." *Samaritan Counseling Center*, 791 P.2d at 348. *VECO, Inc. v. Rosebrock*, 970 P.2d 906 (Alaska 1999) clarified *Samaritan Counseling Center*, stating that a broad interpretation of the holding would be improper and that a minimal amount of motivation to serve the employer is required in order to satisfy the motivation to serve test. *VECO*, 970 P.2d at 924 n. 36. *Samaritan Counseling Center* suggests that an employee has the motivation to serve his employer while performing an act that he is authorized to perform. The Restatement (Second) of Agency, which Alaska finds relevant to this analysis, even notes that "If, therefore, the servant does the very act directed, or does the kind of act which he is authorized to perform ... there is an inference that he is acting within the scope of employment." Restatement (Second) of Agency § 235, cmt. a (1958).

Two recent Alaska Supreme Court decisions have discussed the application of this factor. In *Laidlaw*, the Alaskan Supreme Court found that the conduct had the requisite amount of motivation to serve the employer because the conduct at issue, driving the bus, was the very function that the driver was hired to perform. *Laidlaw*, 53 P.3d at 1099. Therefore, the driver's actions both arose out of and were incidental to his legitimate work activities. *Id*. While the court did not provide much reasoning for its holding, it appears to imply that it would have been impossible for the driver to drive the school bus without any motivation to serve the employer because the two issues are so intertwined.

The Alaska Supreme Court found that a material issue of fact remained on this factor in *Ondrusek v. Murphy*, 120 P.3d 1053 (Alaska 2005). However, in *Ondrusek*, the court also did not determine that the first Restatement factor was met. Because there was uncertainty concerning whether the activity performed was of the kind the employee is employed to perform, there was also uncertainty over whether

the tortious conduct arose out of or was reasonably incidental to legitimate work activities.

As discussed under the first factor, the actions taken by Defendants in the present case both arose out of and were reasonably incidental to their legitimate work activities. *Ondrusek* provides no authority because there is no issue in this case whether Defendants were performing an activity of the kind they were employed to perform. Like *Samaritan Counseling Center*, the actions rose above the 'reasonably incidental' standard; the actions were in fact the Defendants' legitimate work activities. The actions were so intimately intertwined with Defendants' job duties that they cannot be separated. This conclusion, while based on Alaskan law, is also consistent with the general principles of the law of agency. *See, e.g.,* Ninth Circuit Model Civil Jury Instruction 6.5.

Plaintiff's theory is that Defendants' actions were performed with improper motive or evil intent, and that this motive or intent takes the conduct outside of the scope of employment. That theory is not correct, where the alleged motive is inextricably linked with the job duties that Defendants' were authorized to perform. Defendants were authorized to perform these duties; how any why they performed them does not render these actions outside the scope of employment. Accordingly, the motivation to serve test has been satisfied.

### 4. Use of Force

The fourth factor in the Restatement's test requires that if force is intentionally used by the servant against another, the use of force must not be unexpected by the master. Restatement (Second) of Agency § 228(1)(d). Any force implied during the course of the events on May 12, 2004, was part of and incidental to the authority of Defendants to restrict access and escort individuals from the premises and was therefore not unexpected by the United States.

### 5. Conclusion

Considering the factors relevant to determining scope of employment under Alaskan law, the court concludes that all defendants were acting within their scope of employment during the events of May 12, 2004 and the United States should be substituted as a defendant in place of the individual defendants. Neither further discovery not an evidentiary hearing is necessary because no material issues of fact remain on the scope of employment issue.

1 Therefore, it is hereby **ORDERED** that Defendants' Amended Motion to Amend Caption (Dkt.4-1) is **GRANTED**. Plaintiff's Motion for Evidentiary Hearing (Dkt. 45-1) is **DENIED**. The clerk will amend the caption to substitute and name the United States as a defendant in place of individual defendants Burgess, Smith, Skrocki, Bleicher and Doe.

The Clerk is directed to send uncertified copies of this Order to all counsel of record via the CM/ECF system.

DATED this 23rd day of February, 2007.

_____
Robert J. Bryan
United States District Judge