# EXHIBIT 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply Information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br>United States Department of Justice<br>Civil Division, Torts Branch<br>P.O. Box 888<br>Benjamin Franklin Station<br>Washington D.C. 20044 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>Mark A. Rosenbaum<br>c/o Fortier & Mikko, P.C.<br>101 West Benson Blvd., #304<br>Anchorage, AK 99503 | | |
|---|---|---|---|
| 3. TYPE OF EMPLOYMENT<br>□ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>02/17/59 | 5. MARITAL STATUS<br>-Select-  S | 6. DATE AND DAY OF ACCIDENT<br>05/12/04 -Select Day Wednesday, | 7. TIME (A.M. OR P.M.) |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

(See Attached)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State and Zip Code).  c/o Fortier & Mikko, P.C.
Mark A. Rosenbaum, 4940 Byrd, Lane, Anchorage, AK 99502

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

(See Attached)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

(See Attached)

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| (See Attached) | (See Attached) |

| 12. (See Instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| $25,000.00 | $2,000,000.00 | -0- | $2,025,000.00 0.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*[signature]* | 13b. Phone number of person signing form<br>(907) 243-2400 | 14. DATE OF SIGNATURE<br>11 May 2006 |
|---|---|---|
| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS | |
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) | |

95-109                    NSN 7540-00-634-4046                    STANDARD FORM 95
                                                                  PRESCRIBED BY DEPT. OF JUSTICE
                                                                  28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☒ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount.

☐ Yes    Full Coverage ☐

☐ No    Deductible ☐

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in Item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95    BACK

**Form 95-108**
**Attachment to Claim for Damage, Injury, or Death**

1.    **Submit to Appropriate Federal Agency:**

    (b)    United States Attorney
             District of Alaska
             Federal Building & U.S. Courthouse
             222 West 7th Avenue, #9, Room 253
             Anchorage, Alaska 99513-7567

8.    **Basis of the Claim:**

Mark A. Rosenbaum was, on May 12, 2004, an Assistant United States Attorney ("AUSA") completing his 21st year as a AUSA. He was employed as an Assistant U.S. Attorney in and for the District of Alaska, and based at 222 West 7th Avenue, #9 Room 253, Anchorage, Alaska, 99513-7657.

The U.S. Attorney and the Department of Justice both knew and/or had reason to know, that Mr. Rosenbaum had several disabilities that required reasonable accommodations, and that Mr. Rosenbaum was fully qualified for his position as AUSA. These disabilities included vision issues (Mr. Rosenbaum had corneal transplants in the early 1980's and as a result, was totally dependent on hard, gas-permeable corrective contact lenses). Due to the nature of the transplants, Mr. Rosenbaum had difficulty, from time to time, with placement of the lenses. In addition, Mr. Rosenbaum was also suffering physical ailments, including gastro-intestinal difficulties, and a herniated disk at C-2, C-3.

On May 12, 2004, between 5:00 p.m. and 5:15 p.m., U.S. Attorney Timothy M. Burgess and his first assistant, Assistant U.S. Attorney Deborah M. Smith, summoned

Mr. Rosenbaum into the U.S. Attorney's conference room, and advised him that, effective May 12, 2004, he would be required to vacate his office, and be placed on a "home duty", where he would be expected "to remain at your home and be available by email and your home telephone during your normal duty hours, from 8:30 to 5:30 p.m." *See* Exhibit 1 hereto. Further, he was instructed that he was permitted to be "away from your home phone" only during the lunch hours, from 12:00 - 1:00 p.m. In effect, he was placed under house arrest. *Id.* He was also informed, notwithstanding over 18-1/2 years of high pressure trial and appellate work, that all future work would be as a ghost writer of appellate briefs for other less qualified attorneys, and further, that he would have no leave absent an emergency. *Id.* In addition, he was informed that his access to the U.S. Attorney's Office for the District of Alaska was suspended, and he was directed to surrender his U.S. Department of Justice credentials, identifying him as an AUSA, including his access card, key, car sticker, and informed that his access code would be cancelled. *Id.* Further, he was directed that he was not to enter the office without an escort, and any required access would be based upon a prior express request, which would be in turn determined by a supervisor. Finally, Mr. Rosenbaum was informed by U.S. Attorney Burgess that the requirements set forth in the May 12, 2004 letter were to remain in effect "until I decide otherwise". In short, per Exhibit 1, Mr. Rosenbaum was stripped of his official credentials, his duties, his reputation held in a false light and he was banished to his home, which the U.S. Attorney for the District of Alaska appropriated, including, and without limitation, telephone lines and other forms of

Form 95-108                    2
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

communication, for its own purposes. Thereafter, for the period commencing on May 13, 2004, and until Mr. Rosenbaum, in a state of near nervous breakdown, accepted an early retirement, he was so confined. Mr. Rosenbaum's home, at 4940 Byrd Lane, Anchorage, Alaska, in effect, became his "Gulag", operated, and without compensation, by the United States Attorney for the District of Alaska.

In addition, for the period beginning at approximately 5:30 p.m., the end of the normal work day at the Anchorage office of the USA Attorney, until between 6:00 p.m. and 6:15 p.m., on May 12, 2004, Federal Protective Officers, upon instructions of the US Attorney, detained Mr. Rosenbaum in violation of his Federal and state Constitutional Rights.

At least one of the catalysts for the abuse and negligent conduct on the part of the United States Attorney's Office, which was aided, abetted, formulated, and agreed upon through the United States Department of Justice, appears to be on account of a custody dispute between Mr. Rosenbaum and United States Probation Officer Pamela Shaw. Indeed, the United States Department of Justice and/or the United States Attorney, provided, *inter alia*, information through various sources, presently unknown, to Ms. Shaw, regarding Mr. Rosenbaum's constructive discharge, and the roles played by the Department of Justice and the United States Attorney's Office in that procedure. In addition, the conduct also appears to have arisen out of a personal animus, and/or on account of retaliation against Mr. Rosenbaum based upon his ethnicity and/or his personality and/or his assertion of constitutionally protected interests.

Form 95-108                     3
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

It is believed that the following person were involved:

>Timothy M. Burgess, United States Attorney;
>Deborah M. Smith, First Assistant United States Attorney;
>Steven Skrocki, Assistant United States Attorney;
>FPO Tim Bleicher; and
>FPO John Doe (name unknown)

9.    **Property Damage - Brief Description of the Property, Nature and Extent of Damage and Location Where Property may be Inspected.**

The property consisted of Mr. Rosenbaum's personal residence and telephone and cable modem lines. The nature and extent of damage includes but is not limited to the unlawful taking of Mr. Rosenbaum's residence and appurtenances (including communications, such as the telephone lines, the cable modem lines, computer equipment, printers, fax machines, and other methods of communication) without compensation from May 13, 2004 through September 30, 2004.

10.    **Personal Injury/Wrongful Death - State Nature and Extent of Each Injury or Cause of Death, which forms the basis of the claim. If other than Claimant, state name of injured person or decedent:**

Personal injuries include, but are not limited to, intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with economic interests and/or advantages, conspiracy to violate Mr. Rosenbaum's civil rights, invasion of Mr. Rosenbaum's privacy, holding Mr. Rosenbaum in a false light, conspiracy to interfere with custodial relations, disparate treatment of Mr. Rosenbaum relative to other employees similarly situated with respect to work, privileges, communications, access,

Form 95-108                              4
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

and freedom of association; harassment, intimidation, hostile work environment, resulting in a constructive discharge, post-traumatic stress disorder, and/or as well, a violation of the Americans with Disabilities Act, retaliation in violation of the Americans with Disabilities Act, and violations of Mr. Rosenbaum's Federal and State Constitutional rights. The United States Attorneys for the District of Alaska and the United States Department of Justice had notice with respect to special needs of Mr. Rosenbaum, who was a qualified individual, with respect to Mr. Rosenbaum's corneal transplants and physical infirmities. Finally, on information and belief, the acts, practices and harm arose out of antagonism on the part of one or more of the persons identified above, as responsible persons, because of Mr. Rosenbaum's ethnicity and religion (Mr. Rosenbaum is Jewish), there being no other rational explanations for the behavior, acts and conduct against Mr. Rosenbaum.

**11.    Witness:**

    (1)    Timothy M. Burgess, USA;
           United States Attorney's Office
           District of Alaska
           222 West 7th Avenue, #9, Room 253
           Anchorage, Alaska 99513-7567

    (2)    Deborah M. Smith, 1st AUSA
           United States Attorney's Office
           District of Alaska
           222 West 7th Avenue, #9, Room 253
           Anchorage, Alaska 99513-7567

Form 95-108                          5
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

(3)    Steven Skrocki, AUSA
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(4)    Tim Bleicher, Federal Protective Officer
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(5)    John Doe I, Federal Protective Officer
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(6)    Crandon Randell, AUSA
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(7)    Joseph W. Bottini, AUSA;
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(8)    Audrey J. Renschen, AUSA;
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

(9)    Scarlett Smith, Assistant Systems Administrator;
        United States Attorney's Office
        District of Alaska
        222 West 7th Avenue, #9, Room 253
        Anchorage, Alaska 99513-7567

Form 95-108                               6
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

(10)   Susan J. Lindquist, AUSA
United States Attorney's Office
District of Alaska
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567

(11)   Richard Pomeroy, AUSA
United States Attorney's Office
District of Alaska
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567

(12)   Ed Neunlist, Employee Assistant Counselor for EOUSA
Phone: (202) 514-1036 or (888) 271-0381

(13)   Eileen Grady, Employee Assistant Counselor for EOUSA
Phone: (202) 514-1036 or (888) 271-0381

(14)   Renee Robinson, Systems Administrator
United States Attorney's Office
District of Alaska
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: 271-2308

(15)   Chuck Farmer, Assistant Witness Coordinator
United States Attorney's Office
District of Alaska
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567

(16)   Jeffrey A. Gonnason, O.D.
2211 E. Northern Lights Blvd.
Anchorage, AK 99503
Phone: 276-2080

(17)   Griffith Steiner, M.D.
542 W. 2nd Avenue
Anchorage, AK
Phone: 276-1617

Form 95-108                              7
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum

(18)   Aaron Steinberg, D.O.
       (will supplement)

(19)   Terry Zeznock
       c/o IRS, Criminal Investigation Division
       949 E. 36th, Room 206
       Anchorage, AK 99503
       Phone: 271-6245

(20)   Karen L. Loeffler, AUSA
       United States Attorney's Office
       District of Alaska
       222 West 7th Avenue, #9, Room 253
       Anchorage, Alaska 99513-7567

(21)   Frank Powers
       c/o EPA
       Anchorage, AK
       Phone: 271-6226

(22)   Kathy J. Hurlburt, M.D.
       3340 Providence Drive, #358
       Anchorage, AK
       Phone: 261-2880

(23)   Dr. Robert A Lane, Jr.
       750 E. Fireweed, Suite 200
       Anchorage, AK 99503
       Phone: 561-4535

(24)   Dr. Carolyn Rader
       Langdon Clinic
       4001 Dale Street, Suite 101
       Anchorage, AK 99508

(25)   Anthony Delbert, Ph.D.
       4001 Dale Street, #101
       Anchorage, AK
       Phone: 550-2300

Form 95-108                          8
Attachment to Claim for Damage, Injury, or Death
Mark A. Rosenbaum



U.S. Department of Justice

*United States Attorney*
*District of Alaska*

_____

*Federal Building & U.S. Courthouse*
*222 West 7th Avenue, #9, Room 253*
*Anchorage, Alaska 99513-7567*        *Commercial: (907) 271-5071*
                                      *Fax Number: (907) 271-3224*

May 12, 2004

<u>**PRIVACY ACT SENSITIVE**</u>

Mark Rosenbaum
4940 Byrd Lane
Anchorage, Alaska 99502

   Re: Temporary Assignment

Dear Mr. Rosenbaum:

   Please be advised that as of May 13, 2004, you will be placed on a work-at-home schedule where you will continue with your full-time work duties. Until further notice, your official duty station will be your home at 4940 Byrd Lane, Anchorage, Alaska 99502. You will be expected to remain at your home and be available by e-mail and your home telephone during your normal duty hours, from 8:30-5:30 p.m. You may be away from your home phone during your lunch hour from noon until 1 p.m. During this assignment you will report directly to Civil Chief Lane Tucker, using the remote e-mail feature of your laptop computer, e-mailing her in the morning when you begin your work assignment and again in the evening when you cease work for the day.

   While you are on this work-at-home schedule, your work assignments will be handled as follows:

   Appellate Chief JoAnn Farrington will e-mail your legal assignments. Your initial assignments will include completion of an appellate brief previously assigned to you, *United States v. Phillips*. That brief is due to be filed on May 25, with the brief due to Ms. Farrington and your secretary by close of business May 18. Please abide by all office appellate guidelines and any additional deadlines or requirements articulated by Ms. Farrington and/or Ms. Tucker. If they request to see earlier drafts prior to May 18, please follow their directives.

   You are also assigned to the appeal in *United States v. Zamora*. This brief is due June 10, with the final submitted to Ms. Farrington for review June 3. The appellant's brief and excerpt of record are being provided to you today. Again, please abide by all office appellate guidelines and any additional deadlines or requirements articulated by Ms. Farrington and/or Ms. Tucker. If they request to see earlier drafts prior to June 3, please follow their directives.

**Page 2**

To conduct the necessary legal research, you can connect to Westlaw using the remote access feature of the laptop computer. You should email all drafts of the appellate briefs to Ms. Farrington and to your secretary, Judy Miller.

You are to report your progress to both Ms. Tucker and Ms. Farrington by email at the end of each day, for example, indicating what research has been accomplished or what portions of the brief have been completed.

You should be able to perform your work assignments using the laptop computer. However, if you require any additional equipment or supplies, please advise Ms. Tucker immediately of your needs.

Although your primary communication with Ms. Tucker will be by e-mail, you have been given a number of pre-stamped envelopes to use to send forms such as leave slips to the office. All requests for leave shall be submitted by e-mail in advance to Ms. Tucker and if approved, you will follow this up with a signed leave slip verifying your request. The leave slip should be mailed prior to the time that the leave is taken. All terms and conditions of the leave restriction letter you have received will remain in effect while you work from your home. If it is necessary to deliver documents quickly to the office, please contact either Ms. Tucker or Ms. Farrington, who can arrange for courier service.

Your workdays will be from 8:30 a.m. to 5:30 p.m., excluding your lunch hour from 12:00 p.m. to 1:00 p.m. If you wish to depart from home for any reason during normal duty hours (other than the lunch hour), you must use the remote access feature to email Ms. Tucker in advance to confirm the nature and duration of your absence. Upon your return you shall e-mail Ms. Tucker again to confirm the actual duration of the time spent away from your duty station. Should Ms. Tucker be out of the office for a day or more, you will be notified as to whom you should contact in her absence. If Ms. Tucker or Ms. Farrington attempt to contact you at your home at any time during your regularly scheduled duty hours and are unable to do so, you will be charged with Absence Without Leave (AWOL). You are warned that AWOL is serious misconduct which may result in disciplinary action being taken against you.

Every Friday, you should submit by e-mail to Ms. Tucker a summary of the hours that you have worked on each work assignment. Ms. Tucker will forward this to support staff for use in preparation of your USA-5.

Your access to the United States Attorney's Office for the District of Alaska is suspended during this time period. Accordingly, today you will surrender your access card, key to your office, and car sticker that provides access to the garage. Your access code will be cancelled effective the close of business May 12, 2004. Thus, you are not authorized to enter the office without an escort during this time period. If you require access to the office for any reason, you must request permission from Ms. Tucker in advance and, if approved, an escort will be provided to you.

**Page 3**

    The above requirements will remain in effect until I decide otherwise. I will review your status in two weeks, on May 26, 2004. Please acknowledge receipt of this letter below by signing and dating the copy of the document provided with this original.

                    Very truly yours,

                    TIMOTHY M. BURGESS
                    United States Attorney

**ACKNOWLEDGMENT OF RECEIPT:**

Mark Rosenbaum                        5/17/04

                                          Date

*E3 Consulting*           *16251 Chasewood Lane*           *Anchorage, Ak 99516*
*Phone/fax (907) 227-9217/345-5813    traamine@alaska.net*

May 10, 2006

Sam Fortier
Fortier & Mikko, P.C.
101 West Benson, Suite 304
Anchorage, Alaska 99503

RE: Mr. Mark Rosenbaum

Mr. Fortier,

You requested that I prepare a preliminary analysis of losses Mr. Mark Rosenbaum suffered. In preparing this paper I spoke with Mr. Rosenbaum and checked online resources including the Federal Office of Personnel Management.

The following dates are relied upon for the calculation of economic loss of Mr. Mark Rosenbaum.

| | | |
|---|---|---|
| Date of birth | 17 February 1950 | 1950.132 |
| Date of separation | 30 September 2004 | 2004.745 |
| Beginning of Federal service | 23 April 1984 | 1984.311 |
| Projected retirement date | 19 August 2009 | 2009.632 |
| Statistical years of life remaining[1] | | 27.145 years |
| Calculated date at death | | 2031.893 |
| Calculated age at death | | 81.762 years |

I am informed of the following:
- Mr. Rosenbaum intended to retire at age 59 ½.
- At the time of separation he earned $109,500 per annum plus a 25% tax free COLA.
- He was entitled to a return contract with 18,000 lbs of household goods to a radius as far as Los Angeles.
- He received a $25,000 taxable bonus upon separation.
- He participated in the FERS program and placed 10% of his pre-tax, non-COLA income into TSP.

The Office of Personnel Management's web site contains the following information of which I made use:
- Basic pay was adjusted upwards in 2002 by 3.6%, 2003 by 3.1%, 2004 by 2.7%, 2005 by 2.5% and in 2006 by 2.1%.

---

[1]     Statistical Abstract of the United States. 2006.  Table 98 – Expectation of Life and Expected Deaths by Race, Sex and Age: 2002.   A white male 51 years old has a future life expectancy of 27.7 years while a 52 year old has a 26.8 year expectancy.

- FERS contributions are matched 100% up to 3% of salary and then 50% up to 5% of salary. They are not matched beyond that.

**Lost Income**

Mr. Rosenbaum's economic loss arose slightly more than five years prior to his planned retirement. During this period he would have continued to receive wages and COLA. The top section of Table 1 presents pertinent personal and employment information. In the second section his past and future pay rates are determined. This calculation utilized annual pay raises as found on the Office of Personnel Management web site.

Table 2 extrapolates lost income from his salary. Annual salary is adjusted for portion of year worked. His TSP contributions are deducted from gross salary to arrive at adjusted income. COLA, set at 25% of gross salary, is added to adjusted income to arrive at total income. Future income is discounted at a rate of 2.27% to determine net present value. Federal TSP contributions of 4% of gross pay are also presented for informational purposes.

Total discounted lost income, net of TSP contributions, amounts to $625,059.

**Adjustment for Net Present Value**

Net present value is the amount of money required today to produce a specified future value. Future losses must be adjusted to a net present value amount using a net discount rate that takes into account both future inflation and expected net interest in a safe and secure investment. The determination of discount rate was simplified in 1997 when the U.S. Treasury began issuing Treasury Inflation Protected Securities (TIPS). These securities are fully backed by the federal government and pay the holder the rate of interest on the note plus the rate of inflation for the 12 prior months. The securities trade at a discount or premium to face depending on interest rate movements since issue. Since the annual interest rate is adjusted for inflation, the rate of yield is a real interest rate. On May 10, 2006, 5 year TIPS were yielding 2.27%, 10 year TIPS were yielding 2.42%, and 20 year TIPS were yielding 2.46%.[2]

**Retirement**

Lacking better information, I have proxied Mr. Rosenbaum's retirement benefits based on a difference in annuity approach. Mr. Rosenbaum was discharged with 20 years of service. Had he been able to retire when he desired he would have had 25 years of service. His average top three years of service upon discharge were $103,286. They would have averaged $114,594 had he worked until age 59 ½. Using the annuity approach, Mr. Rosenbaum will receive $7,991 less per year in retirement than he otherwise would have. These calculations are contained in the third section of Table 1.

Mr. Rosenbaum informed me that he was contributing 10% of his base salary to TSP. The federal government matched these contributions by an additional 4% of his salary for a total of

---

[2]    http://www.bloomberg.com/markets/rates/index.html

14%. If the information concerning FERS account funds and balances was available I would be able to make a more realistic extrapolation of such benefits. Lacking this, I have used the average presented by TSP.[3] To this I have subtracted the CPI change over the same 10 year period as taken from the Federal Reserve Bank of Minneapolis.[4] The result is a real annual growth rate for TSP funds of 4.7%.

TSP growth projections are presented in Table 3. The discount and TSP real growth rates for future growth are presented. Contributions from self and employer matched are totaled and grown at the past and future rates of growth. Past growth is not adjusted for inflation. Future withdrawals are determined based on a presumption of equal annual withdrawals. Growth is factored at the end of each year based on beginning balance less withdrawal and one-half growth of withdrawal. This presumption results in a $0 balance upon Mr. Rosenbaum's death with no remaining benefit for heirs.

Annuity and TSP withdrawals are added together in Table 2 and discounted for inflation. The NPV of future retirement benefits is $240,330.

The calculation of retirement benefits is underestimated for a number of reasons. Mr. Rosenbaum mentioned in passing that he was forced by economic conditions to withdraw funds from his TSP account. Any withdrawals will result in compounded future losses. Likewise, I have modeled the TSP account based on an average of the funds available as presented on the TSP web site. To the extent that Mr. Rosenbaum utilizes a different mix of funds the future real growth of his TSP will differ. I have used only a ten-year average of fund growth since that was all that was presented. A more accurate picture could be obtained by evaluating the investment strategy over a longer historic period.

| | | |
|---|---|---|
| **Minimum Total Lost Income:** | Lost adjusted wages and COLA | $625,059 |
| | Lost benefits in retirement (NPV) | $240,330 |
| Total | | $865,389 |

This analysis underestimates retirement losses, and does not account for loss of household services, additional employment related benefits, or medical costs, among others. Should more information be made available, I would be willing to reanalyze Mr. Rosenbaum's losses.

Sincerely,

*Richard Tremaine*

Economist
Signed electronically

---

[3]     Data at http://www.tsp.gov/rates/monthly-history.html. Straight average of 10-year funds is 7.22%. In 2004 they returned an average of 11.49% and in 2005 an average of 7.12%. For the 12 months ending in April 2006 they have returned an average of 16.96% (http://www.tsp.gov/rates/monthly-current.html).

[4]     Data at http://woodrow.mpls.frb.fed.us/research/data/us/calc/hist1913.cfm. The average was 2.52%.

**Table 1**
**Mr. Mark Rosenbaum: Federal Service, Pay and Retirement Schedules**

**Dates of Service**

| | |
|---|---|
| Date of Birth | 1950 .132 |
| Date of Beginning Federal Service | 1984 .311 |
| Date of Discharge | 2004 .749 |
| Age at Discharge | 54.617 |
| Years of Service at Discharge | 20.437 |
| Expected Date of Retirement | 2009 .633 |
| Years of Service at Retirement | 25.321 |

**Pay Schedule**

| | | | | Calculated Annual Salary | |
|---|---|---|---|---|---|
| Pay Schedule Changes | | | 2001 | $99,822 | |
| | 2001 - 2002 | 3.6% | 2002 | $103,415 | |
| | 2002 - 2003 | 3.1% | 2003 | $106,621 | |
| | 2003 - 2004 | 2.7% | 2004 | $109,500 | Known |
| | 2004 - 2005 | 2.5% | 2005 | $112,238 | |
| | 2005 - 2006 | 2.1% | 2006 | $114,594 | |

**Retirement Annuity Payments**
Discharge

| | |
|---|---|
| Top 3 years average salary | $103,286 |
| Years of service for retirement | 20 |
| Annuity payment (yrs * 3 yr avg) | $20,657 |

Retirement

| | |
|---|---|
| Top 3 years average salary | $114,594 |
| Years of service for retirement | 25 |
| Annuity payment (yrs * 3 yr avg) | $28,649 |

| | |
|---|---|
| Difference in annuity, per year | $7,991 |

**Table 2**
**Calculation of Mr. Rosenbaum's Lost Income**

**Working Life**

| [A] Year | [B] Portion | [C] Annual Salary | [D] Gross Salary | [E] TSP Withheld | [F] Adjusted Income | [G] COLA | [H] Total Income | [I] Discount T. Income | [J] Federal TSP Cont |
|---|---|---|---|---|---|---|---|---|---|
| 2004 | 0.250 | $109,500 | $27,376 | $2,738 | $24,638 | $6,844 | $31,481 | $31,481 | $1,095 |
| 2005 | 1.000 | $112,238 | $112,238 | $11,224 | $101,014 | $28,059 | $129,073 | $129,073 | $4,490 |
| 2006 | 1.000 | $114,594 | $114,594 | $11,459 | $103,135 | $28,649 | $131,784 | $131,784 | $4,584 |
| 2007 | 1.000 | $114,594 | $114,594 | $11,459 | $103,135 | $28,649 | $131,784 | $128,859 | $4,584 |
| 2008 | 1.000 | $114,594 | $114,594 | $11,459 | $103,135 | $28,649 | $131,784 | $125,998 | $4,584 |
| 2009 | 0.632 | $114,594 | $72,424 | $7,242 | $65,181 | $18,106 | $83,287 | $77,863 | $2,887 |
|  |  |  | $555,820 | $55,582 | $500,238 | $138,955 | $639,193 | $625,059 | $22,233 |

**Retirement**

| Year | Portion | [K] Annuity Difference | [L] TSP Withdrawal | [M] Discounted Retirement Benefits | Discount Rate |
|---|---|---|---|---|---|
| 2009 | 0.368 | $2,941 | $2,573 | $5,155 | 2.27% |
| 2010 | 1.000 | $7,991 | $6,992 | $13,696 | 2.27% |
| 2011 | 1.000 | $7,991 | $6,992 | $13,327 | 2.37% |
| 2012 | 1.000 | $7,991 | $6,992 | $12,981 | 2.42% |
| 2013 | 1.000 | $7,991 | $6,992 | $12,674 | 2.42% |
| 2014 | 1.000 | $7,991 | $6,992 | $12,374 | 2.42% |
| 2015 | 1.000 | $7,991 | $6,992 | $12,082 | 2.42% |
| 2016 | 1.000 | $7,991 | $6,992 | $11,751 | 2.46% |
| 2017 | 1.000 | $7,991 | $6,992 | $11,466 | 2.46% |
| 2018 | 1.000 | $7,991 | $6,992 | $11,193 | 2.46% |
| 2019 | 1.000 | $7,991 | $6,992 | $10,924 | 2.46% |
| 2020 | 1.000 | $7,991 | $6,992 | $10,662 | 2.46% |
| 2021 | 1.000 | $7,991 | $6,992 | $10,406 | 2.46% |
| 2022 | 1.000 | $7,991 | $6,992 | $10,156 | 2.46% |
| 2023 | 1.000 | $7,991 | $6,992 | $9,912 | 2.46% |
| 2024 | 1.000 | $7,991 | $6,992 | $9,674 | 2.46% |
| 2025 | 1.000 | $7,991 | $6,992 | $9,442 | 2.46% |
| 2026 | 1.000 | $7,991 | $6,992 | $9,416 | 2.35% |
| 2027 | 1.000 | $7,991 | $6,992 | $9,199 | 2.35% |
| 2028 | 1.000 | $7,991 | $6,992 | $8,988 | 2.35% |
| 2029 | 1.000 | $7,991 | $6,992 | $8,782 | 2.35% |
| 2030 | 1.000 | $7,991 | $6,992 | $8,580 | 2.35% |
| 2031 | 0.893 | $7,136 | $6,244 | $7,466 | 2.35% |
|  |  |  |  | $240,330 |  |

**Table 3**
**TSP Growth Projections for Mr. Rosenbaum**

| Discount Rate | 2.29% |
|---|---|
| TSP Real Growth Rate | 4.70% |

**Contributions**

|  | Contributions | | | TSP | End Year |
|---|---|---|---|---|---|
|  | 10% Self | 4% Fed | Total | Growth | Balance |
| 2004 | $2,738 | $1,095 | $3,833 | | |
| 2005 | $11,224 | $4,490 | $15,713 | 7.19% | $20,951 |
| 2006 | $11,459 | $4,584 | $16,043 | 16.96% | $43,269 |
| 2007 | $11,459 | $4,584 | $16,043 | 4.70% | $62,099 |
| 2008 | $11,459 | $4,584 | $16,043 | 4.70% | $81,815 |
| 2009 | $7,242 | $2,897 | $10,139 | 2.97% | $94,686 |

**Withdrawals**

|  | Beginning Balance | $6,992 Withdrawal | Ending Balance |
|---|---|---|---|
| 2009 | $94,686 | $2,573 | $96,541 |
| 2010 | $96,541 | $6,992 | $93,923 |
| 2011 | $93,923 | $6,992 | $91,181 |
| 2012 | $91,181 | $6,992 | $88,310 |
| 2013 | $88,310 | $6,992 | $85,305 |
| 2014 | $85,305 | $6,992 | $82,158 |
| 2015 | $82,158 | $6,992 | $78,864 |
| 2016 | $78,864 | $6,992 | $75,414 |
| 2017 | $75,414 | $6,992 | $71,803 |
| 2018 | $71,803 | $6,992 | $68,021 |
| 2019 | $68,021 | $6,992 | $64,062 |
| 2020 | $64,062 | $6,992 | $59,917 |
| 2021 | $59,917 | $6,992 | $55,577 |
| 2022 | $55,577 | $6,992 | $51,033 |
| 2023 | $51,033 | $6,992 | $46,276 |
| 2024 | $46,276 | $6,992 | $41,295 |
| 2025 | $41,295 | $6,992 | $36,080 |
| 2026 | $36,080 | $6,992 | $30,619 |
| 2027 | $30,619 | $6,992 | $24,902 |
| 2028 | $24,902 | $6,992 | $18,917 |
| 2029 | $18,917 | $6,992 | $12,650 |
| 2030 | $12,650 | $6,992 | $6,088 |
| 2031 | $6,088 | $6,244 | $0 |

Total

## AFFIDAVIT OF SAMUEL J. FORTIER

STATE OF ALASKA          )
                         ) ss.
THIRD JUDICIAL DISTRICT  )

SAMUEL J. FORTIER, being first duly sworn upon oath, deposes and states as follows:

1.    I am an attorney with the law firm of Fortier & Mikko, P.C., attorneys for Claimant, Mark A. Rosenbaum. All statements herein are based upon my own personal knowledge.

2.    Mr. Rosenbaum supplied me with medical releases, which allowed me to contact Mr. Rosenbaum's physicians and other medical providers. One of the medical providers was Dr. Carolyn Rader, M.D., a psychiatrist, residing and practicing medicine in Anchorage, Alaska.

3.    I contacted Dr. Rader on May 10, 2006, regarding Mr. Rosenbaum's treatment, and Dr. Rader's diagnosis and prognosis of Mr. Rosenbaum. Dr. Rader told me that she would not be able to complete her report until next week.

4.    Accordingly, in order to comply with the requirements of the Federal Tort Claims Act, and after consultation, including consultation with Dr. Rader, I am providing a statement regarding Dr. Rader's oral statements of May 10, 2006 to me. Those statements, upon information and belief, will be included in Dr. Rader's report. That report will supplement this affidavit.

Affidavit of Samuel J. Fortier                    1

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

5.    Dr. Rader informed me that Mr. Rosenbaum was referred to her by Mr. Rosenbaum's internist, Dr. Hurlburt of 3340 Providence Drive, Suite 358, Anchorage, Alaska 99508.    Based on Dr. Hurlburt's medical diagnosis, Mr. Rosenbaum was extremely depressed and suffered from anxiety.

6.    Dr. Rader confirmed that she had been treating Mr. Rosenbaum for about a year.    She confirmed that Mr. Rosenbaum has many of the features of post-traumatic stress disorder, and that the traumatic trigger was Mr. Rosenbaum's banishment and continuing isolation and loss of his career as a result of actions taken by the U.S. Attorney's Office and the Department of Justice.    Dr. Rader advised Mr. Rosenbaum's symptoms are similar to those exhibited by sufferers of post-traumatic stress disorder.

7.    Dr. Rader believes that Mr. Rosenbaum's present condition can be classified as anxiety disorder, and believes this disorder is manifested in Mr. Rosenbaum in a manner very similar to the symptoms exhibited by persons suffering from post-traumatic stress disorders.

8.    Dr. Rader is continuing to provide Ms. Rosenbaum with psychiatric treatment and will provide a prognosis in her initial report.    In addition, Dr. Rader also anticipates refining her diagnosis for the purpose of the final report.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED: _May 11, 2006_

_____
SAMUEL J. FORTIER

Affidavit of Samuel J. Fortier            2

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

SUBSCRIBED AND SWORN before me at Anchorage, Alaska, this ___ day of May, 2006.

Notary in and for Alaska
My commission expires: 3-10-07

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

Affidavit of Samuel J. Fortier          3

IN RE:  MARK A. ROSENBAUM
          Claim For Damage, Injury, or Death
          Form 95-108

## ENTRY OF APPEARANCE

COMES NOW Fortier & Mikko, P.C. and hereby enters its appearance on behalf of Mark A. Rosenbaum in this matter.  Service of documents in this matter may be made upon Samuel J. Fortier at the following address: FORTIER & MIKKO, P.C., 101 West Benson Blvd., Suite 304, Anchorage, AK  99503.

RESPECTFULLY SUBMITTED this _11_ day of May 2006.

FORTIER & MIKKO, P.C.
Attorneys for Plaintiff Mark A. Rosenbaum:

By:_____
SAMUEL J. FORTIER
ABA No. 8211115

FORTIER & MIKKO, P.C., A PROFESSIONAL CORPORATION, 101 W. BENSON BLVD., SUITE 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221